28 A.3d 88

**Daniel A. McNEAL**

v.

**STATE of Maryland.**

**No. 1992, Sept. Term, 2009.**

Court of Special Appeals of Maryland.

Sept. 2, 2011.

512

Martha Gillespie (Paul B. DeWolfe, Public Defender, on the brief), Baltimore, MD, for appellant.

Robert Taylor, Jr. (Douglas F. Gansler, Atty. Gen., on the brief) Baltimore, MD, for appellee.

Panel: WRIGHT, KEHOE and JAMES P. SALMON (Retired, Specially Assigned), JJ.

JAMES P. SALMON (Retired, Specially Assigned), J.

Daniel A. McNeal was convicted by a jury in the Circuit Court for Baltimore City of unlawful possession of a regulated firearm by a prohibited person, and resisting arrest. The jury acquitted McNeal of wearing, carrying, or transporting a handgun. McNeal presents four questions, for our review, which he phrases as follows:

1. Did the trial court err in permitting inconsistent verdicts to stand over defense counsel's objection?

2. Did the trial court err in admitting extrinsic evidence of a prior inconsistent statement made by the Appellant when the Appellant admitted having made the statement and explained why he had made it?

3. Did the trial court err in refusing to instruct the jury that the State was required to prove a *mens rea* inconsistent with innocent possession of the handgun?

4. Was the seven-year sentence imposed for resisting arrest illegal because 1) it was imposed for a common law crime that no longer existed at the time of Appellant's trial; and because 2) it exceeded the statutory maximum for that offense?

## I.

### Evidence Produced By The State

On October 15, 2008, Baltimore City Police Officer Michael Gold saw appellant in the 100 block of Poplar Grove Street and decided to interview him. Officer Gold asked if he could speak to appellant and the latter consented. Officer Gold next asked appellant "if he had anything on him that he shouldn't have." Appellant replied: "Yes. I have a gun in my left front pants pocket." Officer Gold searched appellant and recovered a .9 millimeter Luger from appellant's left front pants pocket. Officer Gold then told appellant he was under arrest. When a fellow officer attempted to handcuff appellant, appellant resisted, got free, and fled. A chase ensued and appellant was captured.

Following Officer Gold's testimony, the parties stipulated that McNeal had previously been "convicted of a crime that would prohibit his possession of a firearm."

## II.

### A. First Issue

The jury convicted McNeal of unlawful possession of a regulated firearm in violation of Md.Code (2003, 2008 Supp.), Section 5–133(b) of the Public Safety Article ("PS"),[1] and acquitted him of wearing, carrying, and transporting a handgun in violation of Md.Code (2002, 2008 Supp.), Section 4–203 of the Criminal Law Article ("CL").[2] After the jury announced its verdict but before the jury had harkened to its verdict, defense counsel objected and, at the bench argued that the verdicts as to wearing, carrying, or transporting a handgun (acquittal) and possession of a handgun by a prohibited person (guilty) were inconsistent and that the jury should therefore be sent back to the jury room for further deliberation to resolve the inconsistency. The prosecutor conceded that the verdicts were factually inconsistent but claimed that they were not legally inconsistent. The trial judge agreed with the prosecutor and accepted the verdicts.

McNeal contends on appeal that, "[i]n light of the manifest inconsistency in the verdicts, the [court] erred in refusing to either strike the guilty verdict for possession of a regulated firearm or return the counts to the jury for further deliberation." *Price v. State*, 405 Md. 10, 949 A.2d 619 (2008), is instructive. Following his trial on "various drug ... and ...

---

1. PS Section 5–133(b) reads: "A person may not possess a regulated firearm if the person ... has been convicted of a disqualifying crime[.]" PS Section 5–101(g) defines "disqualifying crime" as a "crime of violence," a "violation classified as a felony in the State," or a "violation classified as a misdemeanor in the State that carries a statutory penalty of more than 2 years."

2. CL Section 4–203(a)(1) provides that "a person may not ... wear, carry, or transport a handgun, whether concealed or open, on or about the person[.]"

firearms offenses," Price was "acquitted ... of all drug trafficking charges" and "two firearms counts charging possession of a regulated firearm after having been convicted of a prior felony, and unlawfully carrying or transporting a handgun." *Id.* at 13, 15, 949 A.2d 619. "[T]he jury found Price guilty of possession of a firearm during and in relation to a drug trafficking crime, under circumstances constituting a nexus to the drug trafficking crime." *Id.*

On appeal, Price contended that "the Circuit Court erred when it refused to strike the conviction for possession of a firearm during and in relation to a drug trafficking crime because the conviction was inconsistent with the acquittals on all counts charging drug trafficking crimes." *Id.* at 16–17, 949 A.2d 619. Reversing Price's conviction, the Court of Appeals held that, "in criminal jury trials ..., inconsistent verdicts shall no longer be allowed." *Id.* at 29, 949 A.2d 619. In a concurring opinion, in which Judge Battaglia joined, Judge Harrell said:

> .... I think it important to note explicitly that the Majority's holding applies only to "legally inconsistent" verdicts, not "factually inconsistent" verdicts. The Court should continue to recognize factually or "logically" inconsistent verdicts rendered by juries in criminal cases.
>
> \*       \*       \*

*Id.* at 35, 949 A.2d 619(internal citations, footnotes, and quotations omitted).

Since *Price,* this Court has adopted albeit in *dicta*[3] the distinction between factual inconsistency and legal inconsistency as explained by Judge Harrell in his concurrence in *Price. See Tate v. State,* 182 Md.App. 114, 130–31, 957 A.2d 640, *cert. denied,* 406 Md. 747, 962 A.2d 373 (2008). Judge Charles E. Moylan, Jr., speaking for this Court in *Tate,* quoted Judge Harrell's explanation and said:

---

3. The holding in *Tate* was that the verdicts "were not necessarily inconsistent at all." 182 Md.App. at 118, 129, 957 A.2d 640. Thus our secondary conclusion, quoted *infra,* was *dicta.*

A factually inconsistent verdict is one where a jury renders "different verdicts on crimes with distinct elements when there was only one set of proof at a given trial, which makes the verdict illogical." Ashlee Smith, Comment, Vice–A–Verdict: Legally Inconsistent Jury Verdicts Should Not Stand in Maryland, 35 U. BALT. L. REV. 395, 397 n. 16 (2006). The feature distinguishing a factually inconsistent verdict from a legally inconsistent verdict is that a factually inconsistent verdict is merely illogical. By contrast, a legally inconsistent verdict occurs where a jury acts contrary to a trial judge's proper instructions regarding the law. The difference between the two is perhaps best illustrated by examples from other jurisdictions.

Assume a legally intoxicated or otherwise reckless driver causes a head-on collision, killing on impact the driver and passenger of the other car. The intoxicated driver is charged with two counts of vehicular homicide. The jury convicts the defendant of vehicular homicide as to the death of the driver of the other car, but finds the defendant not guilty of the same crime with regard to the death of the passenger. Such a result would constitute factually inconsistent verdicts.

405 Md. at 35–36 [949 A.2d 619] (emphasis supplied).

A legal inconsistency, by contrast, occurs when the crime for which a defendant is acquitted is, in its entirety, a lesser included offense within the greater inclusive offense for which a defendant is convicted. The commission of the greater crime cannot, as a matter of law, take place without the commission of the lesser crime. The lesser crime is a required element of the greater. The acquittal of the lesser crime precludes the finding of that required element of the greater crime for which the defendant was convicted. That is legal, as opposed to factual, inconsistency. It is something that does not involve speculation about possible or probable factual findings. It is something that can be explained in algebraic terms.

The *Price* case itself contained a set of factually inconsistent verdicts as well as a set of legally inconsistent verdicts.

The concurring opinion pointed out that the factual inconsistency would not, in and of itself, have been an occasion for reversing the conviction.

*The verdicts in the present case also contain a factual inconsistency.* Price was acquitted of being a felon in possession of a handgun, but convicted of possessing a handgun in the course of drug trafficking. There was no dispute at trial as to Price's prior felony convictions. Therefore, *it is illogical for the jury to find that Price is guilty of possessing a firearm in the course of drug trafficking without possessing a firearm as a convicted felon. Despite the illogical verdict, this does not rise to the level of a legally inconsistent verdict. Thus, if this were the only grounds for challenging Price's conviction* for possession of a handgun in the course of drug trafficking, *his conviction should be affirmed.*

405 Md. at 37 [949 A.2d 619] (emphasis supplied). The majority opinion itself eschewed any reliance on this factual inconsistency.

*Id.* at 131–32, 957 A.2d 640.

We adopt as the holding in this case what Judge Moylan said in *dicta* in *Tate:* Our holding is dispositive of the first issue raised by appellant because the verdicts were not legally inconsistent. The crime for which appellant was acquitted, and the crime for which he was convicted, each contained elements that the other did not. While the verdicts were factually inconsistent, reversal of the conviction on that ground is not warranted.

A violation of § 5–133 of the Public Safety Article requires proof of a prior disqualifying conviction; a violation of § 4–203 of the Criminal Law Article does not. A violation under Criminal Law section 4–203 requires that the weapon be carried on the defendant's person or in a vehicle traveling on a highway, waterway, or airway generally used by the public; Under section P.S. § 5–133, other forms of possession are also forbidden. As the jury was instructed, possession (for purposes of section 5–133 of the Public Safety Article) may be

"actual or indirect ... exclusive or joint possession." Thus the convictions were not legally inconsistent.

In this appeal appellant *does not* contend that the convictions *were* legally inconsistent. Instead, appellant argues that we should not recognize the distinction between a legally inconsistent verdict, and a factually inconsistent verdict. Appellant does not even cite *Tate*, much less try to distinguish it. For the reasons enunciated in *Tate*, we hold that the trial judge did not err in declining to set aside the conviction for possession of a handgun by a prohibited person simply because that conviction was factually inconsistent with the jury's acquittal of appellant for wearing, carrying, or transporting a handgun.

## III.

Prior to trial, McNeal moved to suppress "all evidence obtained by police authorities" and "all statements and/or confessions taken from [McNeal] by police authorities." At a hearing on the motion, McNeal, testified, in pertinent part, as follows:

[DEFENSE COUNSEL:] Prior to the time that the police came, did something unusual happen to you—

\* \* \*

... with regard to this gun?

[McNEAL:] Yes. Well, as I was coming from Poplar Grove and Winchester, I was walking up the street. I found the gun on the sidewalk and I picked the gun up and put it in my pocket, because I seen [sic] there was other people walking up and down the street and there was children out there; and I have four children of my own.

I picked the gun up and I was going to turn it into the police department or take it down to homicide to, either, possibly get some money for it, or just take it up the street because there was [sic] children up there.

\* \* \*

[DEFENSE COUNSEL:] Now, from the time you put that gun in your pocket until the time the police officer approached you, how much time elapsed?

[McNEAL:] Maybe five, ten minutes.

[DEFENSE COUNSEL:] And, during that five, ten minutes, were you walking, or were you all standing there?

[McNEAL:] *I continued to walk. I would not stand up there with no [sic] gun on me.*

[DEFENSE COUNSEL:] So, the place where the officer stopped you was how far from where you actually found the gun?

[McNEAL:] *I'd say about a foot.*

(Emphasis added.)

McNeal also testified at the suppression hearing that when he found the gun he was "in the company" of two other people but, after finding the gun, he said nothing to his companions.

At trial, appellant elected to testify. Insofar as is here pertinent, what appellant testified to at trial and what counsel did (or contended) during the course of appellant's testimony was accurately summarized by the State, in its brief, as follows: [4]

[Appellant testified at trial] that he found a handgun in the grass near a bus stop, and—for the benefit of the children,—put the gun in his pocket and walked the distance of "two or three houses" along Poplar Grove Street before police stopped him. On cross-examination, McNeal stated that he had been walking alone with the gun in his pocket for two or three minutes before the police stopped him. At that point, the State advised the court that it wished to impeach McNeal with his prior statements at a motions hearing. The court allowed it, with no objection from McNeal's attorney.

The prosecutor showed McNeal a copy of the transcript of his testimony at the motions hearing, and asked McNeal if

---

4. We have made a few minor edits to the State's summary.

he had previously stated that he was walking with two other people when he was arrested. McNeal flatly denied having said that. The portion of the transcript in which McNeal stated that he was walking "between two other people" as he proceeded down Poplar Grove Street was then read to McNeal.

The prosecutor [next] read a portion of the transcript from the motion's hearing where McNeal stated that "five or ten minutes" elapsed between picking up the gun and being arrested. Another passage was read wherein McNeal stated that the distance from where he found the gun to where he was arrested was "one foot." McNeal explained to the jury that he had his "measurements mixed up" and also "[t]he time was mixed up."

On redirect, McNeal's attorney asked McNeal to give his most accurate answer as to the time and distance that separated his discovery of the gun from his arrest. McNeal reiterated that it was a "couple of minutes" and "two or three houses" from where he picked up the gun to where police stopped him.

His attorney then asked him:

Q. So, if you did say, and I don't know if you did or not. But if you did say one foot, what was that all about?

A. It was just the measurements was mixed up. Like I said, I wasn't out there taking no—with no tape measurer [sic] measuring no time from where they stopped me, none of that.

Q. Do you remember saying one foot? Do you recall using that expression?

A. *I could have said it.*

(Emphasis added.)

When the State sought to admit a redacted transcript of the prior motions hearing testimony, McNeal's attorney objected on the grounds that "if he admits saying it, then that transcript doesn't go in." The State countered that the statement was admissible as "a prior inconsistent state-ments[sic]." McNeal's attorney again objected, arguing

"[w]hat is the inconsistency? He didn't deny that he said a foot. . . . He's admitted it."

(Reference to Record Extract omitted.)

Appellant argues:

The trial judge erred in admitting extrinsic evidence of a prior inconsistent statement made by the appellant when the appellant admitted having made the statement and explained why he had made it.

In support of that argument appellant relies on Md. Rule 5–613, which reads:

(a) Examining witness concerning prior statement. A party examining a witness about a prior written or oral statement made by the witness need not show it to the witness or disclose its contents at that time, provided that before the end of the examination (1) the statement, if written, is disclosed to the witness and the parties, or if the statement is oral, the contents of the statement and the circumstances under which it was made, including the persons to whom it was made, are disclosed to the witness and (2) the witness is given an opportunity to explain or deny it.

(b) Extrinsic evidence of prior inconsistent statement of witness. Unless the interests of justice otherwise require, extrinsic evidence of a prior inconsistent statement by a witness is not admissible under this Rule (1) unless the requirements of section (a) have been met and the witness has failed to admit having made the statement and (2) unless the statement concerns a non-collateral matter.

Appellant contends that the State neglected to prove that he "failed to admit" that he made a prior inconsistent statement, and thus the redacted transcript of what he said at the suppression hearing was inadmissible under rule 5–613(b). He words his argument as follows:

The application of this Rule was discussed by this Court in *Hardison v. State,* 118 Md.App. 225, 702 A.2d 444 (1997), as follows:

Maryland Rule 5–616 permits extrinsic evidence of prior inconsistent statements to be used for the purpose of impeachment, in accordance with Maryland Rule 5–613(b). Under Rule 5–613(b), for extrinsic evidence of a witness's prior inconsistent oral statement to be admissible for impeachment, the following foundation must be laid: 1) the contents of the statement and the circumstances under which it was made, including the person to whom it was made, must have been disclosed to the witness during his trial testimony; 2) the witness must have been given the opportunity to explain or deny the statement; 3) *the witness must have failed to admit having made the statement;* and 4) the statement must concern a non-collateral matter. Before the requirements of Rule 5–613(b) come into play, however, the prior statement of the witness must be established as inconsistent with his trial testimony. *See Stevenson v. State,* 94 Md.App. 715, 721, 619 A.2d 155, 158 (1993).

*Id.* at 237–38 [702 A.2d 444]. (Emphasis added).

In the present case, the appellant admitted on redirect examination that he "may have" made the inherently unbelievable statement that he encountered the police officers "one foot" from where he found the gun. Consequently condition # 4[sic] of *Hardison* was not met.

The trouble with the appellant's argument is that appellant never admitted that he previously made the statements at issue. Instead, his answer was ambiguous, i.e., "I could have said it." Therefore, the State met the "failed to admit" requirement of Rule 5–613(b).

■ Appellant also argues that the portion of the transcript used by the State to impeach his trial testimony (that he was alone when he found the gun) was inadmissible because it constituted impeachment as to a collateral matter, which Rule 5–613 does not allow. This contention is waived because at trial appellant's counsel volunteered his ground for the objection and that ground had nothing to do with whether impeachment was as to a collateral matter. *See* Md. Rule 4–323(a);

*see also von Lusch v. State* 279 Md. 255, 263, 368 A.2d 468 (1977).

## IV.

Appellant's counsel asked the trial court to give the jury the following instruction:

> I would now like to explain to you the doctrine of *"mens rea."* [McNeal] has explained to you that he found the weapon just prior to his arrest, and that he picked it up intending to turn it into the police department, and also to see to it that it did not cause injury to any of the children in the area. The doctrine of *mens rea,* or wrongful intent, requires that a defendant have a wrongful intent before he can be convicted of a criminal offense. For example, if a person runs into a burning home to save a life, he could not be convicted of trespass. In this case, you can only convict [McNeal] if you find that the [S]tate has proved beyond a reasonable doubt, that he possessed the weapon, and that he did so with wrongful intent.

The trial judge declined to give the requested instruction, instead, the court instructed the jury as follows:

> Now, as to both possession and wear, carrying a handgun, the State has the obligation to prove possession and also has the obligation to prove: First, knowledge on the part of [McNeal]. That he was in possession of a handgun. And second, that at least [McNeal] had a general intent to carry the weapon for use, either offensively, defensively or simply to carry it. It is up to you to determine [McNeal's knowl-edge or lack of knowledge or intent to use it or to carry it or lack. And as to both of those issues, the burden never shifts from the State. They have the burden of proving beyond a reasonable doubt that he knew it and he knew he had a gun and that he intended to either use it or to carry it as a gun.

McNeal contends that "it was error [for the court] to refuse his counsel's requested instruction," because "[t]he instructions that were given did not adequately convey to the

jury that [McNeal should not have been convicted of . . . the possession of a firearm . . . if he intended to possess . . . it only for the purpose of turning it over to the police." We reject that contention. "In order for . . . evidence supporting [a] handgun possession conviction to be sufficient, it must demonstrate either directly or inferentially that [the defendant] exercised some dominion or control over the" handgun. *Parker v. State,* 402 Md. 372, 407, 936 A.2d 862 (2007) (internal citations and quotations omitted). "Wrongful intent" is not an element of unlawful possession of a regulated firearm as defined by PS Section 5–133(b), *supra,* and therefore the court did not err in omitting the element from its instructions to the jury.

■ McNeal contends that, if he "could be held criminally liable even though he was possessing [the handgun] for innocent reasons," then "the charged offenses were strict liability crimes, and such an interpretation is generally disfavored." He cites *Staples v. U.S.,* 511 U.S. 600, 606, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994) ("offenses that require no *mens rea* generally are disfavored"). The charge of which appellant was convicted did require proof of *mens rea,* but not the *mens rea* appellant suggests. Although PS Section 5–133(b) is silent concerning the *mens rea* required, the Court of Appeals has held that a "possession conviction normally requires knowledge of the illicit item." *Parker,* 402 Md. at 407, 936 A.2d 862. Here the court instructed the jury in conformity with *Parker,* when it said: "the State has the obligation to prove . . . knowledge on the part of" McNeal that "he was in possession of a handgun."

## V.

■ Appellant contends that the sentence imposed for the crime of resisting arrest was illegal for two independent reasons. First, according to appellant, the common law misdemeanor of resisting arrest was abrogated when the legislature, in 2004, enacted a statute that is now codified in Maryland Code (2002, 2010 Supplement), Criminal Law Article,

section 9–408.[5]  Second, according to appellant, even if the common law crime of resisting arrest still exists, the seven years concurrent sentence was illegal because, under the new statute, the maximum sentence for resisting arrest is three years.   The State maintains that the common law crime of resisting arrest was not abrogated by the statute.   It concedes, however, that the sentence was illegal because it exceeded the statutory maximum set forth by section 9–408(c).

In 2004, the Maryland General Assembly enacted a statute that is now codified in section 9–408 of the Criminal Law Article.   It reads:

Sec. 9–408.   Resisting or interfering with arrest.

(a) *"Police officer" defined*—In this section, "police officer" means an individual who is authorized to make an arrest under Title 2 of the Criminal Procedure Article.

(b) *Prohibited.*—A person may not intentionally:

(1) resist a lawful arrest; or

(2) interfere with an individual who the person has reason to know is a police officer who is making or attempting to make a lawful arrest or detention of another person.

(c) *Penalty.*—A person who violates this section is guilty of a misdemeanor and is subject to imprisonment not exceeding 3 years or a fine not exceeding $5,000 or both.

(d) *Unit of prosecution.*—The unit of prosecution for a violation of this section is based on the arrest or detention regardless of the number of police officers involved in the arrest or detention.

According to the *Laws of Maryland,* 2004, Chapters 118 and 119, *Criminal Law Article,* sec. 9–408 was enacted,

---

**5.**   We note that even if we were to hold that the common law crime of resisting arrest no longer exists, appellant would not get out of prison any earlier in light of the fact that 1) we have affirmed his conviction for unlawful possession of a regulated firearm by a prohibited person, which carries a mandatory five-year, no possibility of parole sentence. Appellant received a seven-year sentence for resisting arrest to run concurrent with the five-year, no parole, sentence.   As the State concedes (*see infra* ), however, the seven-year concurrent sentence must be reduced to three years.

FOR the purpose of prohibiting a person from intentionally resisting a lawful arrest; prohibiting a person from intentionally interfering with a police officer who is making or attempting to make a lawful arrest or detention of another person under certain circumstances; providing for the unit of prosecution under this Act; *establishing certain penalties;* defining a certain term; and generally relating to resisting arrest and interfering with a police officer.

(Emphasis supplied.)

The indictment charging appellant with resisting arrest read:

And the Jurors aforesaid, upon their oath aforesaid, do further present that the aforesaid DEFENDANT(S), late of said City, heretofore on or about the date(s) of offense set forth above, at the locations(s) set forth above, in the City of Baltimore, State of Maryland, did by force resist the lawful arrest and apprehension by **P/O Michael Gold,** knowing same to be a law enforcement officer *in violation of the Common Law;* against the peace, government and dignity of the State.

(Emphasis supplied.)

At common law the allowable penalty for the misdemeanor of resisting arrest was any term of imprisonment that did not violate the constitutional prohibition against cruel and unusual punishment.

Section 9–408(b)(2) changed the common law by making it a crime for a third person to interfere with an arrest by a police officer. Section 9–408 did not, however, change the elements as they existed at common law for the crime of resisting arrest.

In section 9–408(d), which deals with the unit of prosecution, the legislature merely codified what the Court of Appeals said in *Purnell v. State,* 375 Md. 678, 698, 827 A.2d 68 (2003), which was decided approximately one year prior to the effective date of section 9–408.

In *Robinson v. State,* 353 Md. 683, 728 A.2d 698 (1999), we held it to be "a generally accepted rule of law that statutes are not presumed to repeal the common law 'further than is expressly declared, and that a statute, made in the affirmative without any negative expressed or implied, does not take away the common law,'" *but we also observed that "where a statute and the common law are in conflict, or where a statute deals with an entire subject-matter,* the rule is otherwise, and the statute is generally construed as abrogating the common law as to that subject." *Id.* at 693, 728 A.2d at 702–03, quoting, in part, from *Lutz v. State,* 167 Md. 12, 15, 172 A. 354, 356 (1934), quoting, in turn, 25 R.C.L. 1054.

*This view, generally disfavoring repeal of the common law by implication, has a long history in Maryland.* In *Hooper v. Mayor & C.C. of Balto.,* 12 Md. 464, 475 (1859), we quoted with approval from DWARRIS ON STATUTES at 695 that "it is not to be presumed that the legislature intended to make any innovation upon the common law, further than the case absolutely required," but that "the law rather infers that the act did not intend to make any alteration other than what is specified, and besides what has been plainly pronounced." (Emphasis in original.) In *Anderson v. State,* 61 Md.App. 436, 449, 487 A.2d 294, 300 (1985), Judge Moylan explained the jurisprudential underpinning for that view, namely, the fact that, by Article 5 of the Declaration of Rights, the common law is Constitutionally guaranteed to the inhabitants of the State. Although that common law may be altered or repealed through statutes duly enacted by the General Assembly, *given the Constitutional underpinning, its erosion is not lightly to be implied.*

*State v. North,* 356 Md. 308, 311–12, 739 A.2d 33 (1999) (Emphasis supplied).

Nothing in either the wording of the new statute or in the statute's legislative history indicates a legislative intent to abrogate the common law crime of resisting arrest.

Appellant contends that the presumption (that a new statute is presumed not to repeal the common law) is overcome where "a statute and the common law are in conflict. . . ." *Robinson v. State,* 353 Md. 683, 693, 728 A.2d 698. The conflict appellant points to is that the common law imposed no maximum sentence while the statute does. That type of a conflict, however, does not overcome the presumption. *See Bowman v. State,* 314 Md. 725, 729, 552 A.2d 1303 (1989), citing *West v. State,* 312 Md. 197, 202, 539 A.2d 231 (1988) (noting that even though the penalties for armed and unarmed robberies are now fixed by statute, the crimes remain common law crimes).

Appellant also contends that "there are strong indications, in line with the *Robinson* [*v. State* ] decision, that the 2004 enactment was intended to replace the common law on the entire subject of resisting arrest." We disagree. The statute makes no attempt at defining resisting arrest. Therefore, it is evident that the phrase, "resist a lawful arrest" is referring to the well-defined parameters of Maryland common law concerning resisting arrest.

■ For the aforegoing reasons, we hold that the common law crime of resisting arrest was not abrogated by the 2004 statute. We agree, however, with the position of both the State and appellant that appellant's sentence should have been capped at the statutory maximum of three years. Accordingly, the sentence imposed for resisting arrest shall be vacated. The case will be remanded to the Circuit Court for Baltimore City for a new sentencing as to the resisting arrest charge. Upon re-sentencing, the sentence imposed shall not exceed three years.

**SENTENCE IMPOSED AS TO RESISTING ARREST VACATED; JUDGMENTS OTHERWISE AFFIRMED; CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR RE–SENTENCING AS TO THE RESISTING ARREST COUNT; COSTS TO BE PAID SEVENTY–FIVE PERCENT (75%) BY APPELLANT AND TWENTY–FIVE PERCENT (25%) BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.**