DAVIS, Circuit Judge,
concurring in part and dissenting in part:
I agree with the majority’s conclusion that the categorical approach applies here. See United States v. Gomez, 690 F.3d 194, 199 (4th Cir.2012).[1] I disagree, however, *332 with the majority’s determination, based on its freewheeling analysis of underlying conduct in a smattering of reported cases involving the Maryland offense of resisting arrest, that Maryland’s resisting arrest statute includes as an element the perpetrator’s use of “violent force” and thus categorically qualifies as a crime of violence under U.S.S.G. § 2L1.2(b)(l)(A)(ii), the applicable guideline.[2]
I
Under the categorical approach, we are restricted to looking “only to the statutory definition of the state crime and the fact of conviction to determine whether the conduct criminalized by the statute, including the most innocent conduct, qualifies as a ‘crime of violence.’ ” United States v. Diaz-Ibarra, 522 F.3d 343, 348 (4th Cir.2008) (citing Taylor v. United States, 495 U.S. 575, 599-601, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990)) (emphasis added). Application note l.B.iii to U.S.S.G. § 2L1.2(b)(l)(A)(ii) defines “crime of violence” as “any of the following offenses under federal, state, or local law: Murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses ... statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.” (emphasis added). As the majority notes, the latter part of the definition is referred to as the “force” clause and, alternatively, the “elements” clause.
In Johnson v. United States, the Supreme Court explained that “in the context of a statutory definition of ‘violent felony,’ the phrase ‘physical force’ means violent force — that is, force capable of causing physical pain or injury to another person.” 559 U.S. 133, 130 S.Ct. 1265, 1271, 176 L.Ed.2d 1 (2010) (emphasis in original).[3] Under the “force” clause of application note l.B.iii’s definition of “crime of violence,” and the Supreme Court’s decision in Johnson, to qualify as a “crime of violence,” Maryland’s resisting arrest offense must have as an element the use, attempted use, or threatened use of physical force (meaning violent force-that is, force capable of causing physical pain or injury to another person) against the person of another. Id. The district court correctly concluded that it does not.[4]
In so concluding, the district court correctly relied on the Maryland Court of Appeals’ decision in Nicolas v. State, 426 Md. 385, 44 A.3d 396, 409 (2012), which analyzed whether second degree assault and resisting arrest convictions merge under Maryland’s required evidence test. In *333 its analysis, which of course homed in on the elements of the two offenses, the Nicolas court held that a conviction for second degree assault merges into the conviction for resisting arrest because
[a]ll of the elements of second degree assault are included within the offense of resisting arrest. The ‘force’ that is required to find a defendant guilty of resisting arrest is the same as the ‘offensive physical contact’ that is required to find a defendant guilty of the battery variety of second degree assault.
Nicolas, 426 Md. 385, 44 A.3d at 409 (emphasis added). It is firmly established that Maryland second degree assault covers “any attempt to apply the least force to the person of another,” Lamb v. State, 141 Md.App. 610, 786 A.2d 783, 798 (2001) (quoting Ott v. State, 11 Md.App. 259, 273 A.2d 630, 633 (1971)). It is therefore not categorically a crime of violence under federal sentencing enhancement provisions, as members of this Court, including the author of today’s majority opinion, have long acknowledged. See United States v. Taylor, 659 F.3d 339, 345-46 (4th Cir.2011).[5] Thus, the district court correctly concluded that resisting arrest in Maryland is not categorically a crime of violence because the Maryland courts have “not said that the amount of force necessary to constitute resisting arrest is greater than that required for second degree assault [i.e., de minimis].” J.A. 109 (emphasis added).
Under Johnson, because the force necessary to support a conviction for resisting arrest in Maryland — the most innocent conduct that can qualify for the offense— includes a mere offensive touching, the Maryland statute does not have as an element the use, attempted use, or threatened use of violent force, and thus is not categorically a “crime of violence.” See Johnson, 130 S.Ct. at 1271. This being so, we should vacate the judgment and remand for resentencing, which most likely will yield the same 36-month period of incarceration actually imposed. See infra p. 338 n. 16.
II
The syllogism pointing to the correct outcome in this case is embarrassingly simple. How, then, does the majority get such an easy case so wrong? The answer no doubt lies in my good colleague’s continued frustration with the major mess that federal sentencing enhancement law has become, cf. United States v. Vann, 660 F.3d 771, 801-07 (4th Cir.2011) (en banc) (Wilkinson, J., concurring in the judgment),[6] coupled with a strong desire to *334 expand the use of the modified categorical approach to broad statutory offenses such as Maryland’s resisting arrest offense.[7]
A
The majority first relies on its harvest of cases from the government’s brief to reason that “[s]ince 1950, the Maryland appellate courts have issued opinions describing the facts underlying convictions for resisting arrest,” and “[e]very case, save one, demonstrates that the defendant acted in a manner involving violent force directed against ... a law enforcement officer.” Ante, at 325. Even if true (and it’s not), so what?
The majority’s attempt to support its desired outcome by recounting the actual conduct underlying some of the scores of resisting arrest cases in Maryland appellate courts entirely disregards this Court’s consistent adherence to the rule that, under the categorical approach, we look only to the statutory definition of the state crime and the fact of conviction. The majority gives mere lip service to the principle that we are to engage in an elements-based inquiry, not a conduct-based one.[8] *335 See Descamps, 133 S.Ct. at 2283 (“The key, we emphasized, is elements, not facts.”); United States v. Romo-Villalobos, 674 F.3d 1246, 1249 (11th Cir.2012) (“While Johnson proscribes us from relying on state case law to determine whether a crime requires ‘violent force,’ it expressly directs us to look to state cases to determine the elements of the state offense.”), cert. denied, — U.S.—, 133 S.Ct. 248, 184 L.Ed.2d 132 (2012) (emphasis added).[9]
The majority also relies, heavily but inexplicably, on the Maryland Court of Special Appeals’ decision in Rich v. State, 205 Md.App. 227, 44 A.3d 1063, 1077 (2012). But Rich simply held that Maryland appellate courts had sometimes used “or” when they should have used “and” to describe the resisting arrest offense because “both a refusal to submit to lawful arrest and resistance by force or threat of force are necessary to commit the offense of resisting arrest in Maryland.” Id. (emphasis in original). The Rich court did not state, let alone hold, that resisting arrest required violent force. In fact, it is more accurate to say that it did the opposite by citing the Maryland Court of Appeals’ holding in Nicolas that “[t]he ‘force’ that is required to find a defendant guilty of resisting arrest is the same as the ‘offensive physical contact’ that is required to find a defendant guilty of the battery variety of second degree assault” (i.e., de minimis contact). Id. (quoting Nicolas, 44 A.3d at 409) (emphasis added).[10]
By my count (assuming arguendo that counting is an accepted methodology in this appeal), in various ways the Rich court used the phrase “by force” sixteen times; it never used the phrase “by violent force.” Indeed, in Rich, the Court of Special Appeals reversed a conviction for resisting arrest even where the defendant conceded (clearly on the basis of the bench and bar’s then understanding of the elements of the Maryland offense of resisting arrest, i.e., that running away was sufficient) that he had indeed resisted arrest. See id. at 1070 n. 2. The defendant’s unavailing concession was entirely consistent with the view of the trial judge and the arguments of the state prosecutor. See id. at 1066. Contrary to the majority's repeated suggestions, the reversal in Rich was not based *336 on a lack of “violent force”; it was based on the absence of any showing of force whatsoever. How the majority can now claim that Rich’s clarification that force (or threat of force) is a necessary element of the offense (in combination with a refusal to submit) somehow equates to a holding that violent force is what the court meant to say, is utterly beyond my comprehension.[11]
The majority further argues that “conduct underlying past convictions ... may provide probative evidence of how the law defines the elements of the offense in question,” ante, at 325, but such an inquiry into previous convictions under the statute is entirely unnecessary and inappropriate when a state’s highest court has — as Maryland’s has — clearly stated how it defines the element of force, and what it encompasses. Here, that definition undoubtedly covers de minimis physical contact. See Nicolas, 44 A.3d at 409; see also Williams v. State, 208 Md.App. 622, 57 A.3d 508 (2012) (resisting arrest conviction based on acts not constituting violent force affirmed; citing with approval Maryland Pattern Jury Instruction, requiring jury finding merely of “force” for resisting arrest conviction), cert. granted, 430 Md. 644, 62 A.3d 730 (2013). We do not need “evidence” of what the law is or “data points,” see ante, at 323, to decide this case. The highest court of Maryland has told us what the law is, as the experienced district judge concluded. All we need is the ability to read the Court of Appeals’ opinion and follow its teaching. Obviously, the majority can do the former but is, curiously, disabled from doing the latter.[12]
Manifestly, the majority misapprehends our task in this case as a search for some “generic” version of resisting arrest, as if resisting arrest were one of the enumerated offenses in the applicable guideline. See ante, at 325 (declaring majority’s need “to find the existence of an element of *337 [resisting arrest]” and citing for support United States v. Diaz-Ibarra, 522 F.3d 343 (4th Cir.2008), in which this Court had observed, 522 F.3d at 348, “Before we can determine whether Diaz-Ibarra’s crimes constituted ‘sexual abuse of a minor,’ however, we must know what ‘sexual abuse of a minor’ means.”). For a recent example of this Court’s performance of that task, see Judge Wilkinson’s excellent opinion in United States v. Rangel-Castaneda, 709 F.3d 373 (4th Cir.2013) (identifying elements of “generic” crime of statutory rape).[13] But as I have explained, that is not our task here; we need only accept, as we must, the state courts’ statement of the elements of the Maryland offense of resisting arrest. Johnson, ISO S.Ct. at 1269.
Indeed, our recent opinion in United States v. Torres-Miguel, 701 F.3d 165 (4th Cir.2012), makes this point with unmistakable clarity. There, we held that a California threat “to commit a crime that will result in death or great bodily injury” is not categorically a crime of violence, under the same provision of the Sentencing Guidelines that is at issue in this case. Id. at 168-71. We so held even though the defendant pointed to no case in which the California courts had actually applied the statute to conduct that did not involve a threat of violence. Id. at 170.
Properly viewed, therefore, analysis of the unlisted resisting arrest crime at issue here and the threat crime at issue in Torres-Miguel is materially different from that applicable to the listed offenses at issue in Diaz-Ibarra, Rangel-Castaneda, and similar cases. Neither resisting arrest nor the California threat crime outlaws a listed crime and neither has a recognizable generic definition, much less one involving “violent force.” Thus, in the case at hand, as in Torres-Miguel, it is inappropriate to search for a “generic” crime as does the majority. In sum, as already mentioned, we have no better “evidence” of the elements of resisting arrest than what the Maryland Court of Appeals has declared, a declaration which shows that resisting arrest does not categorically require violent force.
B
Tellingly, the majority also attempts to support its reasoning by noting that this Court has held that a Maryland resisting arrest conviction qualifies as a “violent felony” for purposes of the ACCA and the U.S.S.G. § 4B1.2 enhancements under their respective “residual clauses.” This is a very inconvenient truth for the majority, however, as the majority only acknowledges, in the blink of an eye, the vastly different language used in the “force” (or “elements”) clause and the “residual” clause, and it entirely overlooks the significantly different analysis[14] applied to each.
*338 The “residual” clause under the ACCA covers offenses that “involve[ ] conduct that presents a serious potential risk of physical injury to another.” United States v. Wardrick, 350 F.3d 446, 454 (4th Cir.2003) (quoting 18 U.S.C. § 924(e)(2)(B)(ii)). The “force” clause at issue here, however, encompasses any offense that “has as an element the use, attempted use, or threatened use of 'physical force against the person of another.” U.S.S.G. § 2L1.2(b)(l) cmt. n. l(B)(iii) (emphasis added). The clauses are readily, one might say even painfully obviously, distinguishable, and the Supreme Court has given clear guidance that, unlike the “residual clause,” the “force clause” is read to require “violent force.” Johnson, 130 S.Ct. at 1271. The clauses are distinct for a reason. That a Maryland conviction for resisting arrest qualifies as a crime of violence under one, is in no way dispositive of whether it qualifies under the other.[15]
Ill
In a case arising from a dispute over fruits and vegetables, a federal judge can call an apple an orange and a carrot a tomato if he chooses to do so. But even if he can persuade a second federal judge to agree with him, through linguistic jiu jitsu or otherwise, that apple remains an apple, and that carrot is still a carrot. Similarly, a federal judge might wish fervently that federal sentencing jurisprudence was unfailingly coherent, always consistent with his view of “legislative intent,” wholly symmetrical and enduringly cogent. Accordingly, he might wish that, in particular, the “elements clause” and the “force clause” and the “residual clause” in such laws always yield the identical outcome when they apply separately to the same underlying criminal offense. But federal sentencing jurisprudence does not meet those criteria, and those clauses do not operate with the harmony that judge might desire. And merely saying they do does not make it so. It appears that the majority’s holding is the first of its kind; that innovation is not helpful.
The damage done here is not so much to Aparicio-Soria, who is well past the midpoint of his 36-month sentence and who is likely to be returned to his country of origin even before his sentence expires.[16] The damage done here is to the rule of law in this circuit, a much more lasting wound.

. We delayed release of our opinions in this case pending the Supreme Court's decision in Descamps v. United States,-U.S.-, 133 S.Ct. 2276, 186 L.Ed.2d 438 (2013). As the majority notes, ante, at 321 & 325, the reasoning and holding in Descamps strongly affirm the correctness of Judge Floyd's trenchant analysis of "indivisible statutes” for our Court in Gomez.

. The above statement of the majority’s holding clears away the underbrush from the majority’s -more oblique locution: "[W]e conclude that resisting arrest constitutes a 'crime of violence' within the meaning of U.S.S.G. § 2L1.2(b)(l)(A)(ii).” Ante, at 331-32.

. Recognizing the similarity in the language used in the Armed Career Criminal Act (the “ACCA”) defining “violent felony,” and the “force” clause of the Sentencing Guidelines, we have interchangeably relied on cases in the two contexts to interpret the terms within them. Gomez, 690 F.3d at 197.

.The distinguished judge who imposed the sentence in this case has been a federal judge in the District of Maryland for over 25 years: more than seven years as a magistrate judge and nearly twenty years as a district judge. Before taking the bench, she was for eight years the Chief of the Criminal Appeals Division in the Office of the Attorney General of Maryland. All of which is to say that the judge knows something about Maryland criminal law and practice, including both the historical and contemporary elements of common law and statutory criminal offenses prosecuted in Maryland courts.

. Judge Wilkinson reasoned as follows in Taylor:
The Maryland statute prohibiting second-degree assault provides that "[a] person may not commit an assault,” which in turn is defined as “the crimes of assault, battery, and assault and battery, which retain their judicially determined meanings.” Md.Code Ann., Crim. Law §§ 3-201(b),[3]-203(a). Because this definition is so broad, we have frequently recognized our inability to discern from a conviction and the statute’s elements alone whether a defendant actually committed a violent felony. See United States v. Alston, 611 F.3d 219, 222-23 (4th Cir.2010) (using modified categorical approach to determine whether Maryland second-degree assault qualifies as a violent felony); United States v. Harcum, 587 F.3d 219, 224 (4th Cir.2009) (same).
659 F.3d at 345-46. Of course, after Descamps v. United States, - U.S. -, 133 S.Ct. 2276, 186 L.Ed.2d 438 (2013), convictions under the Maryland second degree assault statute can no longer be analyzed for federal sentencing enhancement purposes pursuant to the modified categorical approach.

. The profusion of opinions here, however,
illustrates the obvious difficulties that courts are experiencing in applying the residual clause of 18 U.S.C. § 924(e)(2)(B)(ii). Whether this is due to the fondness of Con *334 gress for vague formulations or the propensity of judges to weave intricate webs of doctrine, I do not know. Whatever the reason, when an inquiry becomes overly complex, the best course is to repair to simplicity....
Vann, 660 F.3d at 801 (Wilkinson, J., concurring in the judgment); cf. United States v. Rodriguez, 711 F.3d 541, 545 n. 2 (5th Cir.2013) (en banc) (complaining that judicial "confusion and gymnastics ... result from the categorical and modifled-categorical approaches in their current form”).

. See Vann, 660 F.3d at 802 (Wilkinson, J., concurring in the judgment) ("I believe the court has no choice but to adopt in this case a modified categorical approach.”); id. at 804 ("[Wjhen a statute is too broad to categorically serve as an ACCA predicate, the proper approach is not to throw up our hands and abandon the purpose of the statute, but rather to proceed with the modified categorical approach.”). My friend is not alone in his views. Cf. Moncrieffe v. Holder,-U.S.-, 133 S.Ct. 1678, 1686-87, 185 L.Ed.2d 727 (2013) (Alito, J., dissenting) ("I would hold that the categorical approach is not controlling where the state conviction at issue was based on a state statute that [is overly broad].... In such situations, it is appropriate to look beyond the elements of the state offense and to rely as well on facts that were admitted in state court or that, taking a realistic view, were clearly proved.”). Nevertheless, to date, those views belong solely in dissenting opinions, not majority opinions. Cf. id.

. Even judged by its own dubious metric of counting opinions and divining the import of ambiguous language, the majority's tack is deeply flawed. Like the intermediate appellate courts of any state of more than 5 million residents, many living in abject poverty and suffering the scourge of substance abuse, the Maryland Court of Special Appeals publishes a small percentage of its annual output of opinions, particularly opinions in criminal cases. The majority cannot count, and thus refuses to contemplate, the many unknown unpublished (and indeed, effectively unre-viewable) opinions in the relevant genre, which has grown over the years.
In fact, in the just-concluded legislative session, the Maryland General Assembly authorized two additional judgeships (rather than the four sought) for the 13-member court on the basis of a need summarized by the fiscal note accompanying the bill’s passage. See Dep’t of Legislative Servs., Md. Gen. Assembly, Fiscal & Policy Note for S.B. 239, 2013 Sess. at 3;
Court of Special Appeals
The judicial workload standards indicate a need for four additional judgeships. The Court of Special Appeals has not received additional judgeships since the bench was increased to 13 judges in 1977. Over that 35-year period, filings have increased by 41.9% and dispositions have increased by 37.8%. In addition, the number of opinions increased by 38.4% and the length of opinions by 137%. The caseload per judge has increased by 41.9%.
Available at http://167.102.242.144/search? client=mgaleg_default & proxystylesh- *335 eet=mgaleg_default & output=xml_no_dtd & getfields=author.title.keywords & filter=0 & entqr=3 & ie=latinl & oe=UTF-8 & num=100 & q=239 & site=2013rs (visited May 4, 2013). And see infra n. 11.

. Romo-Villalobos is particularly instructive here because the Eleventh Circuit was assessing a Florida resisting arrest statute that provided as follows, in pertinent part: “Whoever knowingly and willfully resists, obstructs, or opposes any officer ... in the lawful execution of any legal duty, by offering or doing violence to the person of such officer ... is guilty of a felony of the third degree....” Florida Statute § 843.01. See 674 F.3d at 1249 (emphasis in original). The differences between the elements in the Florida resisting arrest statute and those in the Maryland resisting arrest statute are as obvious as is the majority’s misguided attempt to ignore those differences in its interpretation of the latter.

. The Attorney General of Maryland, in an appeal to this Court challenging the district court's denial of qualified immunity to a county sheriff as to claims brought by a terminated deputy sheriff pursuant to 42 U.S.C. § 1983, recently cited and interpreted Rich as follows in his appellate brief:
The elements of resisting arrest are (1) refusal to submit to lawful arrest and (2) resistance by force or threat of force. Rich, 205 Md.App. at 250. Force includes conduct such as ...: scuffling with an officer, pulling away, struggling to get away, or going limp. Id. at 253 n. 8, 258.
Appellant’s Reply Br., Durham v. Jones, No. 12-2303, 2013 WL 1904669, at *13 (4th Cir. May 7, 2013). One would suppose that the Attorney General of Maryland knows something about Maryland criminal law, including Maryland case law interpreting Maryland criminal statutes.

. Counting again, my computer tells me that the Rich opinion contains slightly in excess of 11,000 words. It would be more than passing strange, therefore, if the majority were unable to find a few snippets of dicta which, taken out of context, might marginally support the majority's thesis.

. As with the majority’s apparent interpretation of words such as "struggle” and "push” as synonyms for "violent force,” see ante, at 325-27, there is a distinctly Orwellian cast to the majority's disclaimer that it must not “disrespect decades of actual state court decisions,” ante, at 327 n. 1, inasmuch as the majority proceeds to do exactly that by "disrespecting” the Maryland Court of Appeals’ holding that "[t]he 'force' that is required to find a defendant guilty of resisting arrest is the same as the 'offensive physical contact’ that is required to find a defendant guilty of the battery variety of second degree assault.” Nicolas, 44 A.3d at 409. Equally Orwellian is the majority's insincere hat-tip to federalism, see ante, at 329.
In any event, as I have already explained, see n. 8 supra, even on the majority’s flawed "numerosity” thesis, the majority has overlooked additional Maryland precedents that wholly undermine the majority's arithmetic. See Williams, 57 A.3d 508 (resisting arrest conviction based on acts not constituting violent force affirmed; citing with approval Maryland Pattern Jury Instruction for resisting arrest), cert. granted, 430 Md. 644, 62 A.3d 730 (2013); Olson v. State, 208 Md.App. 309, 56 A.3d 576 (2012), cert. denied, 430 Md. 646, 62 A.3d 731 (2013) (resisting arrest conviction affirmed but resentencing ordered; non-violent force described); McNeal v. State, 200 Md.App. 510, 28 A.3d 88 (2011) (same), off d on other grounds, 426 Md. 455, 44 A.3d 982 (2012). I leave to the reader’s judgment whether the majority's attempts to distinguish these cases pass muster, including whether the majority's studied failure to mention jury instructions matters. See Descamps, 133 S.Ct. at 2291-92 n. 5 (noting that "California’s pattern jury instructions do not require the jury to find invasion of a possessory right before convicting a defendant of burglary” as part of the reason for rejecting the government’s attempt to recast the broad California burglary statute into "generic burglary”).

. To be sure, the opinion in Rangel-Castane-da has not met with universal acclaim:
This recent opinion is puzzling in that it recognizes that the simple strategy of "counting noses” will not work in all cases, acknowledges that states retain discretion to define the offense of statutory rape how they see fit, yet still relies on a state-by-state survey to define the "generic, contemporary meaning” of "statutory rape” in § 2L1.2. [Rangel-Castaneda, 709 F.3d at 379], In our view, this inconsistent rationale makes our court’s harmonizing approach all the more important.
United States v. Rodriguez, 711 F.3d 541, 550 n. 13 (5th Cir.2013) (en banc); but see id. at 574-78 (Dennis, J., dissenting) (expressing strong approval of Rangel-Castaneda).

. The Supreme Court has clarified that in considering whether a prior offense falls categorically within the ACCA's residual clause, "the proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another.” James v. United States, 550 U.S. 192, 197, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007) (emphasis added).

. In fact, as the Supreme Court itself has acknowledged, here in the immigration context, not even all residual clauses yield the same result. See Leocal v. Ashcroft, 543 U.S. 1, 10 n. 7, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004) (distinguishing residual clause in 18 U.S.C. § 16(b), which encompasses conduct "that, by its nature, involves a substantial risk that physical force against the person or property of another may be used," from a Guidelines' residual clause that does not mention physical force).

. It is worth noting, as well, that even if the district court had adopted the 24-to-30 month advisory guidelines range recommended in the Pre-Sentence Investigation Report and refused to apply the 16-level enhancement, judging by the district court's significant downward variance (from a 51-to-71 month range) Aparicio-Soria would likely have received the same sentence. Thus, even if we vacated the judgment and remanded for resentencing, as we should, reimposition of a 36-month sentence is the most likely result. On this record, and in view of the district court’s unchallenged explanation for its sentence, a 36-month sentence would be entirely reasonable, either way.