44 A.3d 1063

Mark Terrill **RICH**

v.

**STATE of Maryland.**

No. 2339, Sept. Term, 2009.

Court of Special Appeals of Maryland.

May 31, 2012.

228

Allison M. Sayers (Paul B. DeWolfe, Public Defender, on the brief), Baltimore, MD, for Appellant.

Carrie J. Williams (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for Appellee.

Panel: MATRICCIANI, WATTS, IRMA S. RAKER, (Retired, specially assigned), JJ.

RAKER, J.

Mark Terrill Rich, appellant, challenges the sufficiency of the evidence to support his convictions in the Circuit Court for Caroline County for the offenses of possession with intent to distribute cocaine, resisting arrest, and second-degree escape. We shall hold that the evidence was insufficient to support the judgments of conviction for possession with attempt to distribute cocaine and resisting arrest, and shall reverse in part. As to the offense of second-degree escape, we shall hold that the

evidence was sufficient to sustain that judgment of conviction, and shall affirm in part.

## I.

Appellant was charged in a criminal information in the Circuit Court for Caroline County with the following eight counts: (1) possession of a controlled dangerous substance, cocaine, with intent to distribute; (2) possession of cocaine; (3) escape in the second degree; (4) possession of marijuana; (5) conspiracy to possess marijuana; (6) resisting or interfering with arrest; (7) disorderly conduct; and (8) failure to obey a lawful and reasonable order of a law enforcement officer. He proceeded to trial before a jury, which convicted him of possession with intent to distribute cocaine, possession of cocaine, possession of marijuana, resisting arrest, and second-degree escape.

The facts in the instant case are not in controversy; the parties differ only as to their legal significance. On February 20, 2009, at approximately 11:00 p.m., Corporal Eric Peterson of the Caroline County Sheriff's Department was on drug patrol as a K–9 officer, accompanied in his patrol car by a drug-detecting dog. He stopped the vehicle in which appellant was a passenger for an inoperative right taillight. Jennifer Smith, appellant's girlfriend, was driving the car. Ms. Smith and appellant got out of the car. Ms. Smith consented to a search of her person, and no drugs were found. Appellant consented to a search of his person, but when the officer removed appellant's hat from his head a bag of marijuana fell into the officer's hand. At that moment, appellant "took off on foot and tried to flee and elude the scene." The officer apprehended appellant about ten to twelve feet from Ms. Smith's vehicle, tackling him to the ground. Corporal Peterson told appellant he was under arrest, placed his hands behind his back, and handcuffed him. The officer then picked appellant up from the ground and led him to the back of Ms. Smith's car. Two additional police patrol cars had since arrived. When Corporal Peterson bent down to pick up the marijuana from the ground, appellant ran off again, this time

in the direction of a residence to the right of the stopped cars. Corporal Peterson again tackled appellant to the right of the house and convinced appellant not to run anymore. Appellant admitted then that the marijuana was his and stated that Ms. Smith did not know he had it.

Corporal Peterson searched the car and appellant and found no other controlled dangerous substances. He checked the area around the house with a flashlight but not with the dog. Two to three days later, Corporal Peterson received a phone call and, as a result, returned to the area of the arrest. He met with Patricia Blunt, a resident of the home near which Corporal Peterson tackled appellant after his second flight. Ms. Blunt gave the officer several small bags containing crack cocaine. She said she found them in the flowerbed near her home where she runs a daycare service. At trial, Ms. Blunt testified that she had been working in her garden three days before appellant's arrest and did not see the cocaine at that time. She also testified that she did not believe anyone else had been in the area around her flowerbed between the night appellant was arrested and the day she found the bags.

At trial, when asked by the prosecutor about any trouble the officer may have had when appellant was handcuffed and arrested, Corporal Peterson stated: "No real trouble. I mean anytime you try to handcuff somebody behind their back usually there's a bit of a defensive motion, but he wasn't offensive in nature or anything like that."

Two other officers testified for the State. Corporal Leonard Nichols, a Maryland State Police officer, assigned to the Caroline County Drug Task Force, was present at Corporal Peterson's stop and arrest of appellant. Corporal Nichols testified that he searched appellant's cell phone and he saw a couple of text messages that stated "hey mister I need a 20" and "I need a 20." Sergeant Ronald Crouch, also of the State Police and assigned to the Caroline County Drug Task Force, was qualified as an expert in the illegal drug trade and testified that the text messages on appellant's phone were "consistent with a user texting a dealer attempting to set up a

purchase of $20 worth of crack cocaine." He testified that frequently drug dealers hide small bags of drugs in their mouths. Appellant testified at trial and admitted to possession of the marijuana but denied that he possessed any crack cocaine that evening.

Appellant moved for judgment of acquittal on all counts, and the following colloquy occurred:

"[DEFENSE COUNSEL]: As to Count Six, resist and interfere with arrest. As to the interfere with arrest, that portion of it is interfering with the arrest of another. As to the resisting arrest itself, basically the testimony of the officer was that he wasn't offensive, he was a little defensive, kind of went dead and it was hard to get him handcuffed. I believe there is case law and I can look it up and it's in the case law behind the statute, basically going limp so it's harder to arrest somebody does not equal resisting arrest, Your Honor. I don't think in the best light there's a resisting arrest in this case."

THE COURT: You don't think fleeing is a resistance to the arrest?

[DEFENSE COUNSEL]: I guess I would go there, that would probably be covered by the second degree escape charge, Your Honor, the fleeing portion of it. This is the actual arrest portion. That's the argument I would be making.

THE COURT: What do you say, [prosecutor]?

[PROSECUTOR]: Your Honor, on the contrary, the second degree escape comes into play once an individual's actually been placed into custody. Physically laid hands, has been arrested, is in the control of law enforcement, which Mr. Rich was when he was tackled to the ground in the road. He was then placed in handcuffs, in between cars. It's that second flight that is the second degree escape. That first flight, Your Honor, I agree with the Court consists, is consistent with a resisting of arrest.

[DEFENSE COUNSEL]: I would counter, rebut that by saying he wasn't placed under arrest until the end of that

first flee, is when the officer testified he placed him under arrest so that first flee by the officer's testimony wouldn't count.

THE COURT: I have him, let's see. The first fleeing was not, he was not placed under arrest. He was then arrested and the second time he ran off he, he had, yeah, that was after he had been arrested. Well, I think I'll let it go to the jury on resisting arrest. Motion is denied as to Count Six."

The court heard argument from counsel as well regarding the possession with intent to distribute cocaine and denied the motion. As to the charges of second-degree escape and possession of cocaine and marijuana, there was no additional argument, and the court permitted the charges to go to the jury. The court did, however, dismiss the conspiracy, disorderly conduct, and failure to obey charges.

In the State's closing argument to the jury, the State made clear that the conduct it was relying on to support the charge of resisting arrest was *not* appellant's second flight, that is, after he was handcuffed, but instead was appellant's first flight, when his marijuana was discovered and he ran from the officer, along with appellant's failure to cooperate with the officer when he attempted to place the handcuffs on him. For the escape charge, the State relied on appellant's flight after he was formally arrested and handcuffed.

The jury convicted appellant. The circuit court sentenced appellant on the distribution charge to a term of incarceration of twelve years, with all but six years suspended; on the cocaine possession charge, to a concurrent, four-year term; on the escape charge, to a consecutive two-year term; on the marijuana possession charge, to a concurrent one-year term; and on the resisting arrest charge, to a concurrent, three-year term. The court further ordered three years of supervised probation following release.

This timely appeal followed.

## II.

Before this Court, appellant argues that the evidence was insufficient to support the offenses of possession with intent to

distribute cocaine, escape in the second degree, and resisting arrest.[1] The test for sufficiency of the evidence is well-settled: Whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Coleman,* 423 Md. 666, 672, 33 A.3d 468 (2011). We address first the possession with intent to distribute crack cocaine.

Appellant asserts that in order to convict him of possession of cocaine with intent to distribute, the State must prove beyond a reasonable doubt that he was aware of the presence of the cocaine and that he exercised dominion and control over the substance, either actual or constructive. Here, the only evidence linking appellant to the cocaine is that he was in the proximity of the Blunt residence a few days before the substance was recovered. Additionally, even assuming *arguendo* that appellant's text messages were drug related, there is no evidence that the cocaine Corporal Peterson found in Ms. Blunt's flower garden was ever possessed by appellant. Ms. Blunt testified that she last went into her flower garden on February 17, 2009, and that she found the drugs on February 23, 2009, six days later.

The State argues that the evidence was sufficient to support this conviction beyond a reasonable doubt. The State relies on Corporal Peterson's testimony that appellant, when he fled, came within five feet of Ms. Blunt's flower garden; that three days later Ms. Blunt found the cocaine; and that three days earlier, when she had been working in the garden, the cocaine was not there. She testified that to her knowledge, no one had been near the flowerbed between the time of the traffic stop and when she discovered the bags containing the cocaine-like substance. She said also that, except for a short trip to the grocery store, she was at home during that period of time; that there is very little foot traffic near her home; and that

---

1. Appellant does not challenge his conviction for possession of marijuana, and we do not consider it.

she did not see anyone walk past the house in the three days following appellant's arrest. The State relies on Sergeant Crouch's testimony that drug dealers hide drugs in their mouths frequently and that these bags could have fit inside appellant's mouth. Additionally, the officer testified that appellant's cell phone text messages were consistent with a drug user texting a dealer attempting to purchase $20 worth of crack cocaine.

We agree with appellant and hold that the evidence was insufficient to find beyond a reasonable doubt that he possessed the cocaine found in Ms. Blunt's flower garden. To sustain a conviction for possession of cocaine with intent to distribute, the State must prove that: (1) the defendant knowingly possessed the cocaine; (2) the defendant knew the general character or illicit nature of the cocaine; (3) that the substance actually was cocaine; and (4) that the defendant intended to distribute some or all of the cocaine. *See Jefferson v. State*, 194 Md.App. 190, 214–15, 4 A.3d 17 (2010); *Colin v. State*, 101 Md.App. 395, 406–08, 646 A.2d 1095 (1994). It is the first element of the offense that is particularly relevant here.

With respect to the first element, there must be sufficient evidence of either actual or constructive possession. *See Taylor v. State*, 346 Md. 452, 457, 697 A.2d 462 (1997). In other words, the evidence must demonstrate directly or support a rational inference that the defendant actually exercised some dominion or control over the cocaine, *i.e.*, that he "exercised some restraining or directing influence over it." *Jefferson*, 194 Md.App. at 214, 4 A.3d 17. The mere presence of a person at the time and place of a crime is not sufficient to justify a conviction for the commission of that crime, nor, particularly, is presence at the scene three days before a controlled dangerous substance is recovered by law enforcement. *See Fleming v. State*, 373 Md. 426, 433, 818 A.2d 1117 (2003).

Knowledge of the presence of drugs is another necessary element of the offense and must be proven beyond a

reasonable doubt. *See Handy v. State,* 175 Md.App. 538, 563, 930 A.2d 1111 (2007). While this knowledge may be inferred from a defendant's exclusive possession, ownership, or control of the premises, when a defendant is not in exclusive possession of the premises or location where the drugs were found, knowledge may not be inferred unless there are other circumstances tending to support an inference of knowledge or control. *Id.* Even though under some circumstances nonexclusive possession may suggest that all the occupants of a residence or car had knowledge of the contraband found there, mere suspicion is not enough. Some evidence that connects a defendant with the contraband is required. *Id.* Under the circumstances presented here, appellant's presence near the flowerbed where the cocaine was found, three days prior to the discovery of the contraband, in a place accessible to the general public, is insufficient.

Although it is *possible* that appellant possessed the cocaine in question, and that he *might* have thrown it in the flowerbed that evening, the evidence is speculative and amounts to mere suspicion. Corporal Peterson testified that when appellant was first apprehended, and before he was near Ms. Blunt's residence, appellant consented verbally to a search of his person. No cocaine was recovered. The State emphasizes Corporal Peterson's testimony that appellant spoke few words prior to his second flight but became more talkative after Corporal Peterson had stopped him near Ms. Blunt's house. But the possibility that a drug dealer could conceal drugs, and that in fact appellant did conceal five plastic bags in his mouth, is nothing more than speculation.

Six days had passed since Ms. Blunt had been in her flower garden and other people had access to the area where the cocaine was recovered. Appellant was not in exclusive control of the flowerbed and, in fact, was never in control of the area. More than evidence of his proximity or presence was required to show that appellant had control over the cocaine. The evidence presented by the State was insufficient to meet the standard of proof beyond a reasonable doubt, and thus appel-

lant's convictions for possession with intent to distribute cocaine must be reversed.

## III.

We turn next to the issue of the sufficiency of the evidence for escape and for resisting arrest. In addition to our consideration of the sufficiency of the evidence for both of those crimes, this case causes us to consider the elements of resisting arrest, second-degree escape, and the relationship between the two.

Before this Court, appellant argues that the evidence was insufficient to support his convictions for both resisting arrest and second-degree escape. He points out that mere flight before a person is arrested cannot constitute resisting arrest, and that because the State insisted that the resisting arrest charge was based only on appellant's flight before he knew he was placed under arrest, the conviction cannot stand.[2] Appellant argues, however, that he cannot be convicted of resisting arrest based upon the second flight because the State only argued that the conduct constituting resisting arrest was the first flight.

The State asserts that the flight before appellant was handcuffed and told he was under arrest was sufficient to support the resisting arrest conviction as well as when he " 'strain[ed] his arms ... straight out' instead of allowing the officer to place handcuffs on him." With respect to the escape charge, the State contends that appellant's argument is meritless because he was in custody.

---

**2.** In his brief, appellant asserts that he "was clearly resisting arrest when he refused to submit to the officers by fleeing after he had been handcuffed." This apparent concession notwithstanding, this Court is obliged to determine independently whether appellant's conduct constituted resisting arrest: "[A] court is not bound by a party's concession of a point of law." *Tamara A. v. Montgomery County Dep't of HHS*, 407 Md. 180, 187, 963 A.2d 773 (2009); *see also Greenstreet v. State*, 392 Md. 652, 667, 898 A.2d 961 (2006) ("[W]e agree with the Court of Special Appeals when it stated that a party may not concede a point of law to the· exclusion of appellate review, as necessary and proper to decide the case.").

## A. Resisting Arrest

 Resisting arrest is a crime in Maryland. It was a common-law offense until 2004 when the General Assembly codified it.[3] *See Nicolas v. State*, 426 Md. 385, 402–05, 44 A.3d 396 (2012); 2004 Maryland Laws chs. 118 & 119, at 546–49 (codified as amended at Md.Code (2002, 2011 Cum.Supp.), § 9–408(b)(1) of the Criminal Law Article).[4] The statute, in pertinent part, merely codifies the common law and provides that "[a] person many not intentionally resist a lawful arrest." The General Assembly did not define the term "resist a lawful arrest," or demonstrate any intention to modify the common law. Moreover, this Court has held that § 9–408 "is referring to the well-defined parameters of Maryland common law concerning resisting arrest." *McNeal v. State*, 200 Md.App. 510, 528, 28 A.3d 88 (2011). Hence, the elements of resisting arrest remain defined by the common law, and we must revisit the case law to examine them.[5]

---

**3.** The Legislature enacted § 9–408(b) in response to *Purnell v. State*, 375 Md. 678, 827 A.2d 68 (2003), which addressed primarily the unit of prosecution for resisting arrest and held that the *act* of resisting an arrest was the proper unit of prosecution, regardless of the number of officers involved. *See, e.g.,* Dep't of Legislative Servs., Md. Gen. Assembly, Fiscal & Policy Note for S.B. 355, 418th Sess. at 1, 3 (2004) [hereinafter Fiscal Note]; *Hearing on S.B. 355 Before S. Comm. on Judicial Proceedings,* 2004 Leg., 418th Sess. (Md. Mar. 3, 2004) (statement of Robert L. Dean, Member, Article 27 Revision Comm.). Article 27 Revision Committee member Robert Dean noted in testimony before the Senate Judicial Proceedings Committee, moreover, that the statute establishes a *mens rea* element, which requires that a defendant know that a law enforcement officer is attempting to arrest him and that the defendant resists the arrest intentionally.

**4.** Unless otherwise noted, all subsequent statutory references shall be to the Criminal Law Article of the Maryland Code.

**5.** Most states have enacted resisting arrest statutes that depart substantially from the common law, including abrogation of the right to resist an unlawful arrest. *See, e.g.,* Alaska Stat. § 11.81.400(a)(1) (2012); 720 Ill. Comp. Stat. Ann. 5/7–7 (2012); Mo.Rev.Stat. § 575.150 (2012); Mont.Code Ann. § 45–7–301 (2011); Neb.Rev.Stat. Ann. § 28–1409(2) (2012); N.J. Stat. Ann. § 2C:3–4(b)(1)(a) (West 2012); S.D. Codified Laws § 22–11–5 (2012); Tenn.Code Ann. § 39–16–602(a)–(b) (2012); *see also* Darrell A.H. Miller, *Retail Rebellion and the Second Amendment,* 86 Ind. L.J. 939, 944 & n. 37 (2011).

Upon reviewing the precedents of this Court and the Court of Appeals, however, we discover an inconsistency that neither party has brought to our attention. The particular cases, while not focusing specifically on whether force is a required element of resisting arrest, have sent mixed signals as to whether force is necessary or whether simple failure to submit to an arrest is sufficient to constitute the crime. *See, e.g., Purnell v. State,* 375 Md. 678, 695–96, 827 A.2d 68 (2003); *Barnhard v. State,* 325 Md. 602, 609–10, 602 A.2d 701 (1992); *Preston v. Warden of Md. House of Corr.,* 225 Md. 628, 629–30, 169 A.2d 407 (1961); *Washington v. State,* 87 Md.App. 132, 137–38, 589 A.2d 493 (1991). All the cases in Maryland seem to set out the first two elements of the offense consistently. The problem arises in setting out the third element of the offense, *i.e.,* whether force or threat of force is a required element or whether simply refusal to submit to the arrest is sufficient. Even in *Nicolas v. State,* the most recent reported case to address resisting arrest, where the use of force was central to one of the issues on appeal, the Court of Appeals set forth both formulations. *See* 426 Md. at 404–06, 44 A.3d 396.

In order to convict a defendant of resisting arrest, the elements the State must prove, in addition to the *mens rea* element, are as follows:

(1) that a law enforcement officer arrested or attempted to arrest the defendant;

(2) that the officer had probable cause to believe that the defendant had committed a crime, *i.e.,* that the arrest was lawful; and

(3) that the defendant refused to submit to the arrest [*either "and" or "or"*] resists the arrest by force.

The preliminary question we must answer is whether element (3) should state "that the defendant refused to submit to that arrest *or* resisted the arrest by force" or "that the defendant refused to submit to that arrest *and* resisted the arrest by force." The first formulation would make refusal to submit sufficient to sustain a conviction; the second would require forceful resistance in addition to a failure to submit.

The issue is dispositive here, for while appellant's flight could amount to a refusal to submit, it cannot be characterized fairly as resistance by force under the common law and, now, the statute. If only refusal is required, his conviction for resisting arrest was proper; if both refusal and resistance are required, the conviction was improper.

Professor Perkins, in his treatise *Criminal Law,* describes the offense of resisting arrest as a form of obstructing justice. *See* R.M. Perkins & R.N. Boyce, *Criminal Law* 553 (3d ed.1982). The offense of obstruction of justice "is an offense which may take a variety of forms," and resisting arrest is one of its most common. *Id.* (internal quotation marks omitted); *see also* Model Penal Code § 242.2 cmt. 1 (1980) ("Resisting arrest is perhaps the most common form of obstruction of justice."). Another form of obstruction of justice is the common-law crime of obstructing or hindering a police officer in the execution of his lawful duties, an offense that may be committed in a broader array of situations than resisting arrest. *See* Perkins, *Criminal Law* at 555 (noting that "[o]bstruction of justice may be committed by interference with an officer's discharge of duties other than that of making an arrest"); *see also* L. Hochheimer, *The Law of Crimes and Criminal Procedure* 436 (2d ed. 1904) (stating that "[t]o 'obstruct' includes any impediment, direct or indirect, active or passive, to the execution of process or exercise of authority"). *See generally Titus v. State,* 423 Md. 548, 558–65, 32 A.3d 44 (2011) (discussing the elements of obstructing or hindering).

As we have noted, the difficulty we face in this case is in determining the law with respect to one particular element of the offense of resisting arrest, *i.e.,* the type of conduct encompassed by the word "resist" in the offense known as "resisting arrest." The case law is not so clear. The key to resolving the problem—and the mixed signals from the Court of Appeals—is perhaps found in the case of *Busch v. State,* 289 Md. 669, 426 A.2d 954 (1981), wherein the Court recognized that both forms of obstruction of justice discussed above use the term "resisting." In *Busch,* the defendant had been charged in District Court of Maryland with the offense of "unlawfully

resist[ing] and hinder[ing] a police officer in the lawful execution of his duties." *Id.* at 671, 426 A.2d 954. He was found guilty in District Court and he appealed to the Circuit Court for Prince George's County. *Id.* At a trial *de novo,* the circuit court permitted the State to amend the charges to allege that Busch "did unlawfully resist arrest by a police officer in the lawful execution of his duties." *Id.* The issue before the Court of Appeals was whether the amendment to the charging document changed the character of the offense, a change not permitted without the consent of the defendant under then-Maryland Rule 713.[6]

The Court of Appeals considered "whether the offense of resisting arrest requires proof of an act different from or additional to the acts necessary to prove the offense of resisting, hindering, or obstructing an officer in the performance of his duties." *Id.* at 673, 426 A.2d 954. Writing for the Court, Judge Rita Davidson explained that under the common law there were two separate yet related crimes: one, resisting arrest, and the other, the offense of resisting, hindering, or obstructing an officer in the performance of his duties. *Id.* at 675, 426 A.2d 954. The Court was looking to see the difference, if any, in the required elements of the two similar but distinct offenses.

Judge Davidson noted that "[r]esisting arrest constitutes an offense at common law." *Id.* at 673, 426 A.2d 954. She explained as follows, noting the forceful and violent character of the conduct undergirding the resisting arrest charge:

"The character of this common law offense was described in *Regina v. Bentley,* 4 Cox C.C. 406, 406–08 (1850). There it was said:

'The prisoner was indicted for cutting and wounding with intent to resist his lawful apprehension: the evidence showed that the prosecutor, a police constable, went with a brother officer, both being in plain clothes, and with two other policemen in uniform, to a public-house, and told the

---

6. Maryland Rule 4–204 is the successor to Rule 713.

prisoner that he wanted him on a charge of highway robbery. He had no warrant, but from information he had received, he thought it his duty to apprehend the prisoner. The latter asked him for further information relative to the charge, which he refused to give, and the prisoner then told him that he would not go to the station-house, unless he was told why, or by what authority, he was apprehended. On the witness immediately proceeding to arrest him, the prisoner violently assaulted and seriously injured him.

Robinson (for the prisoner) contended that, upon this evidence, the prisoner could not be convicted of the crime alleged against him. . . .

Talfourd, J.—I am of opinion, that the objection taken is not well founded. There is, upon the evidence, a sufficient case for the jury. I think that, to support a charge of resisting a lawful apprehension, *it is enough that the prisoner is lawfully apprehended, and it is his determination to resist it.*' "

*Id.* at 673–74, 426 A.2d 954 (alteration and emphasis in original). The *Busch* Court went on to discuss the case of *Preston v. Warden of Maryland House of Correction.* Preston resisted when a state trooper attempted to arrest him for larceny. He was charged subsequently with "resisting an officer in making arrest," and was convicted. *See Busch,* 289 Md. at 674, 426 A.2d 954 (citing *Preston,* 225 Md. at 629, 169 A.2d 407). On appeal, Preston argued, *inter alia,* that the offense of resisting arrest was not recognized in Maryland. Judge Davidson noted that the Court rejected Preston's argument:

"In *Preston,* this Court recognized that the offense of resisting arrest ordinarily requires resistance to a lawful arrest made by an officer of the law in the performance of his official duties. Accordingly, in Maryland, a lawful arrest ordinarily is essential to the offense of resisting arrest."

*Busch,* 289 Md. at 675, 426 A.2d 954 (citations omitted).

The Court of Appeals then went on to consider the separate common-law offense of resisting, hindering, or obstructing an

officer of the law in the performance of his duties, noting that there existed such a separate offense at common law. *See id.* (citing, *inter alia, Roddy v. Finnegan,* 43 Md. 490, 505 (1876); Perkins, *Criminal Law* at 496–97; Hochheimer, *Criminal Law* at 435–36, 440). The specific conduct punishable under this broader offense, in contrast to conduct punishable as resisting arrest, did not need to rise to the level of violence or resistance and could be verbal in nature. The Court explained the type of conduct that constituted the offense of resisting, hindering, or obstructing as follows:

> "The character of such a common law offense was described as long ago as 1634 in *Sheffelds Case,* Clayt. 10, 10–11 (1634). There it was said:
>
>> 'An Action of false imprisonment brought against a Constable, who pleaded not guilty, the Defendant did shew in evidence, that he came to search in time of the plague for lodgers in the town, and he found a stranger and questioned him which way he came into the town; who answered, over the bridge, and the Judge conceived this to be a scornfull answer to an Officer, and because he had no Passe, but travelled without one, and gave such an answer, the Defendant did offer to apprehend him, and the Plaintiffe thereupon being present said to the Defendant he shall not go to prison, but yet offered to passe his word for his forth coming, upon which the Defendant did commit the Plaintiffe, and it was ruled upon evidence, *there was good cause to commit the Plaintiffe for opposing the Constable though but verbally in his Office, who is so ancient an Officer of the commonwealth.'* (Emphasis added.)

In Maryland, such an offense was recognized in *Roddy v. Finnegan,* 43 Md. at 500–05. There, Curran sold a wagonload of hay to Finnegan that was delivered by a driver to the street in front of Finnegan's stable. Either Finnegan or Curran directed the driver to put the hay in a window opening into Finnegan's stable loft. The driver drove the wagon onto the pavement below the window in violation of a city ordinance that made it a crime to drive a wagon onto

the pavement of a street. When Roddy, a police officer, arrived on the scene, he asked why the wagon was on the pavement and ordered the wagon to be removed. After Finnegan told the officer to stop interfering with his business, Roddy told Finnegan that he was under arrest. In response to Finnegan's statement that he was going home, Roddy seized him.

Finnegan sued Roddy for assault and battery. Roddy defended on the ground that he was justified in using a reasonable amount of force because he was making a lawful arrest. Judgment was entered against Roddy.

This Court, holding that Roddy was making a lawful arrest and was, therefore, justified in using a reasonable amount of force, reversed and remanded for a new trial. In reaching this result, this Court relied upon two separate grounds for its finding that Roddy was engaged in making a lawful arrest. Initially, it stated that Finnegan had violated the ordinance either because he had himself directed the driver to drive the wagon onto the pavement or because he had silently acquiesced in that action. Secondly, it specifically stated:

> 'If Finnegan had not been concerned in the violation of the Ordinance, yet, if when Roddy was inquiring into the circumstances, to enable him to ascertain the offending party, Finnegan obstructed him in the discharge of his duty; such conduct was unlawful, and justified Roddy in arresting him.' [*Roddy,* 43 Md. at 505.]"

*Busch,* 289 Md. at 675–77, 426 A.2d 954.

Because the *Roddy* Court acknowledged that obstructing an officer in the performance of his duties was an offense that could occur even before there was an arrest, the *Busch* Court concluded that "an arrest is not essential to the offense of resisting, hindering, or obstructing an officer in the performance of his duties." *Id.* at 677, 426 A.2d 954 (citing *Roddy,* 43 Md. at 505). Notably, in both cases discussed by the *Busch* Court—*Sheffelds Case* and *Roddy v. Finnegan*—an individual could resist, hinder, or obstruct an officer's duties through

verbal acts; physical action was not at issue or apparently required. Whereas, in formulating the offense of resisting arrest, Judge Davidson recounted that in *Regina v. Bentley* the defendant "violently assaulted and seriously injured" the police officer who was trying to arrest him. Since the necessity of a lawful arrest distinguished the two offenses, the *Busch* Court did not delve further into what type of conduct constitutes "resistance" for purposes of sustaining a charge of resisting arrest, or articulate the distinction between the types of conduct that the two offenses embrace.

Thus, because the sufficiency of the specific conduct at issue in a resisting arrest charge has been in controversy in Maryland rarely, if at all, Maryland courts have been less than uniform in describing that element. In *Preston v. Warden of Maryland House of Correction,* for example, the Court observed that "[a] refusal to submit to lawful arrest *and* resistance to an officer of the law in the performance of his duties constitutes an offense at common law." 225 Md. at 629, 169 A.2d 407 (emphasis added). The Court cited treatises on the common law to confirm this rule, such as *Wharton's Criminal Law & Procedure,* which states that "[r]efusal to submit to arrest and resistance to an officer acting in the execution of his official powers constitute an offense indictable at common law." *See id.* (citing, *inter alia,* 4 Wharton's Criminal Law and Procedure § 1617 at 284 (12th ed. 1957)). When resisting arrest was considered again in *Barnhard v. State,* however, the explanation of the required elements had changed. Barnhard was present at the scene of a bar stabbing and became uncooperative, loud, obscene, and threatening when police sought to question him or prevent him from interfering with their investigation. When officers informed him that he was being arrested for disorderly conduct and began to handcuff him, Barnhard "broke free and started swinging the loose handcuff at" them, leading to a scuffle. *See* 325 Md. at 606–07, 602 A.2d 701.

On appeal, Barnhard's essential claim was that his resistance to arrest was justified because he was arrested illegally. Thus, he argued, the evidence was insufficient to sustain his

conviction for resisting arrest. *Id.* at 607, 602 A.2d 701. The Court considered the instructions the trial court gave to the jury:

"The court then instructed the jury on the elements of the crime of disorderly conduct, followed by a detailed instruction on the elements of the crime of resisting arrest. The court stated that the prosecution had the burden of proving that: 1) the defendant was arrested; 2) the arrest was lawful; and 3) the defendant resisted *or* refused to submit to that arrest."

*Id.* at 609–10, 602 A.2d 701 (emphasis added). Note that the *Barnhard* Court inexplicably changed the "and" in *Preston* to "or." The change did not affect the outcome in *Barnhard* because his actions constituted clearly a refusal to submit *and* resistance by force, and whether force was a necessary element of the crime was not at issue in the case. Yet the inconsistency remained in future formulations of the offense.

In *Purnell v. State,* to cite an example, Chief Judge Bell, writing for a unanimous Court, discussed both *Preston* and *Barnhard,* and reiterated the elements of resisting arrest, holding as follows:

"The elements of the offense of resisting arrest, we have stated, are: refusal to submit to lawful arrest *and* resistance to an officer of the law in the performance of his duties. *See Preston v. Warden of Maryland House of Correction, supra,* 225 Md. at 629, 169 A.2d at 408; *Accord, State v. Huebner,* 305 Md. 601, 608, 505 A.2d 1331, 1334–1335 (1986); *Busch v. State, supra,* 289 Md. at 673, 426 A.2d at 956; and *Matter of Nawrocki,* 15 Md.App. 252, 263, 289 A.2d 846, 852 (1972) *cert. denied,* 266 Md. 741 (1972). In *Barnhard v. State, supra,* this Court, as we have seen, approved an instruction which further defined the elements of the crime that: '(1) the defendant was arrested; (2) the arrest was lawful; and (3) the defendant resisted *or* refused to submit to that arrest.' 325 Md. at 609–610, 602 A.2d at 705. We adopt the statement of the elements of the offense expressed in *Barnhard.*"

375 Md. at 695–96, 827 A.2d 68 (emphasis added). The issue before the Court in *Purnell*, again, was not the necessity of force but whether the appropriate unit of prosecution for purposes of resisting arrest was the arrest itself or the number of officers resisted. According to the Court, the third element was satisfied easily by evidence that Purnell assaulted one officer before fleeing and struggled with both officers upon being apprehended. *See id.* at 696, 827 A.2d 68. The Court had no reason to focus on the inconsistency in the *Preston* and *Barnhard* formulations and gave no indication that it noticed the divergence in their respective formulations of the offense.

We observe, moreover, that this Court has not always expressed the third element of the offense consistently, sometimes suggesting that a refusal to submit is sufficient, other times reaffirming that forceful resistance is required. In *Washington v. State*, for example, the defendant had been charged with resisting arrest after he struck a police officer, knocked him off balance, and then took off running. 87 Md.App. at 135, 589 A.2d 493. The issue on appeal was whether the defendant had been under arrest at the time of these incidents. We stated that "[i]n order to decide when the refusal *or* resistance must occur, we consider the meaning which the Court of Appeals has applied to the term 'arrest.'" *Id.* at 138, 589 A.2d 493 (emphasis added) (citing *Barnhard* ). Yet, within the same paragraph, we quoted *Preston's* version of the third element and stated that the offense required "refusal to submit to lawful arrest and resistance to an officer." *Id.* at 137, 589 A.2d 493.

In a later case, where the accused pulled away from the officer's grasp and struck him in the head repeatedly, this Court announced clearly that "[t]he offense of resisting arrest ... requires proof that the appellant intentionally made physical contact with another and that contact was not legally justified .... [and] also requires proof that the force be used to resist a lawful arrest." *Cooper v. State*, 128 Md.App. 257, 265–66, 737 A.2d 613 (1999). As with the facts of the Court of Appeals cases, the defendants' violent actions in *Washington*

and *Cooper* left no doubt that their respective conduct was both a refusal to submit and resistance by force, and no reason to examine whether the presence of both refusal and resistance was required.

Recently, the Court of Appeals had occasion to address the offense of resisting arrest in *Nicolas v. State* and focus on the specific conduct of the defendant. In that case, police officers were questioning Nicolas outside of his house when he decided to end the encounter by pushing one officer, hitting another in the face, and retreating into his home. *See* 426 Md. at 389–92, 44 A.3d 396. The officers decided to arrest him, and pursued him into the house; during the course of handcuffing Nicolas and escorting him outside, Nicolas continued to push, struggle with, and hit the police officers. *See id.* at 391–96, 44 A.3d 396. Nicolas was charged with and convicted of second-degree assault on a police officer and resisting arrest, and the trial court imposed consecutive sentences. The Court of Appeals granted *certiorari* on the question of whether second-degree assault and resisting arrest merge for sentencing purposes when the record is ambiguous regarding whether the jury convicted a defendant of assault based upon conduct distinct from that upon which the jury found the defendant guilty of resisting arrest. *Id.* at 387–91, 44 A.3d 396.

Judge Clayton Greene, writing for the Court, answered the question in the affirmative. In so doing, Judge Greene held that all the elements of assault in the second degree[7] are included within the offense of resisting arrest, noting with respect to the particular conduct at issue in both crimes as follows:

"*The 'force' that is required* to find a defendant guilty of resisting arrest is the same as the 'offensive physical con-

---

7. To convict a defendant of assault in the second degree, the State must prove the following elements: (1) the defendant caused offensive physical contact with, or harm to, the victim; (2) the contact was the result of an intentional or reckless act of the defendant and was not accidental; and (3) the contact was not consented to by the victim or was not legally justified. *See Nicolas v. State,* 426 Md. 385, 402–04, 44 A.3d 396 (2012).

tact' that is required to find a defendant guilty of the battery variety of second degree assault.... The State makes the argument that force applied by a defendant to resist arrest does not have to take the form of force against a person, *i.e.*, a law enforcement officer; thus, the offenses need not merge. While we agree with the State's contention that *the force element* of resisting arrest need not always constitute second degree assault against a law enforcement officer, we hold that when *the force used by a defendant to resist arrest* is the same as the offensive physical contact with a law enforcement officer attempting to effectuate that arrest, the convictions merge under the required evidence test."

*Id.* at 407–08, 44 A.3d 396 (emphasis added). The decision did not elaborate upon the circumstances in which forceful conduct would suffice to constitute resisting arrest yet fall short of amounting to second-degree assault against a police officer, and we need not do so here.

■ No appellate decision has noted, much less explained, *Barnhard's* aberrant use of the word "or," which departed from the elements spelled out in *Preston.* Nevertheless, based upon the treatises cited, Judge Davidson's discussion in *Busch,* the Court of Appeals' original formulation in *Preston* of the common-law elements, the consistently forceful character of the conduct at issue in Maryland's resisting arrest case law, and the latest Court of Appeals opinion, *Nicolas,* we hold that *both* a refusal to submit to lawful arrest *and* resistance by force or threat of force are necessary to commit the offense of resisting arrest in Maryland.

■ Having determined that resistance by force or threat of force is a necessary element of the offense of resisting arrest, we address next whether mere flight, without more, is sufficient to establish this element. We hold that it is not. We reach this conclusion based upon the generally accepted definitions of the word "resist" as opposed to "hinder" or "obstruct," the purpose behind proscribing resisting arrest,

and the absence of any reported Maryland case where flight alone sufficed to convict a defendant of the offense.

*Webster's Third New International Dictionary* defines "resist" as "to withstand the force or the effect of: be able to repel or ward off"; "to exert oneself to counteract or defeat: strive against: OPPOSE." *Webster's Third New International Dictionary* 1932 (1986) [hereinafter *Webster's* ]. The *American Heritage Dictionary* offers a similar definition: "[t]o strive to fend off or offset the actions, effects or force of"; "[t]o remain firm against the actions, effects, or force of; withstand." *American Heritage Dictionary* 1484 (4th ed. 2000); *see also Bouvier's Law Dictionary* 2921 (8th ed. 1914) (defining "resistance" as "the opposition of force to force"). The terms "hinder" and "obstruct" have a much broader reach and encompass more passive activity. *See, e.g., Webster's* at 1070 (defining "hinder" as "to make slow or difficult the course or progress of: RETARD, HAMPER"; "to keep from occurring, starting, or continuing: hold back: PREVENT, CHECK"); *id.* at 1559 (defining "obstruct" as "to be or come in the way of: hinder from passing, action, or operation: IMPEDE, RETARD"). Thus, Perkins has observed that "mere flight to avoid apprehension does not constitute resisting an officer because there is a distinction between avoidance and resistance or obstruction." *See* Perkins, *Criminal Law* at 555 (quoted in *In re Nawrocki*, 15 Md.App. 252, 263, 289 A.2d 846 (1972)); *accord State v. Morin*, 736 N.W.2d 691, 698 (Minn.Ct.App.2007) ("Fleeing a police officer, although a physical act, is of a significantly different nature from obstructing or resisting a police officer."); *cf. Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (distinguishing between "actively resisting arrest or attempting to evade arrest by flight" under a Fourth Amendment analysis for reasonableness of the use of force).

The Maryland Court of Appeals recognized the distinction between resisting arrest and avoiding arrest in *Titus v. State*, 423 Md. 548, 552, 32 A.3d 44 (2011), in which the Court analyzed the elements of the common-law offense of "obstructing and hindering a police officer in the performance of his

duty." Writing for the Court, Judge Greene began by discussing the scholarly consensus on the conduct proscribed by the crime, noting as follows:

"Several treatises are instructive in defining and explaining the terms necessary to constitute the element of actual obstruction or hindrance of an officer. Lewis Hochheimer, in his treatise, stated that the act of obstructing, in the context of the offense of obstructing and hindering, 'includes any impediment, direct or indirect, active or passive, to the execution of process or exercise of authority.' Lewis Hochheimer, *The Law of Crimes and Criminal Procedure* 436 (2d ed. 1904). In distinguishing the offense of resisting arrest from that of obstructing and hindering, it has been noted that '[t]o constitute obstruction of an officer in the performance of his duties it is not necessary that there be an actual or technical assault upon the officer, but there must be acts clearly indicating an intention on the part of [the] accused to prevent the officer from performing his duty. . . .' 2 Hascal R. Brill, *Cyclopedia of Criminal Law* 1783 (1923). This Court in *Busch v. State*, 289 Md. 669, 677, 426 A.2d, 954, 958 (1981) (quotation omitted), recognized that 'resisting an officer in the performance of his duties was an offense that could occur even before there was an arrest.' Thus, it follows that 'the offense of resisting arrest requires proof of an act different from or additional to the acts necessary to prove the offense of resisting, hindering, or obstructing an officer in the performance of his duties[.]' *Busch*, 289 Md. at 678, 426 A.2d at 959; *see* Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* 555 (3d ed.1982) (noting that 'there is a distinction between avoidance and resistance or obstruction' and that '[o]bstruction of justice may be committed by interference with an officer's discharge of duties other than that of making an arrest')."

*Id.* at 562–63, 32 A.3d 44. The Court proceeded then to "look to the meaning of several key words and phrases as defined in both legal and general purpose dictionaries," observing as follows:

"*Black's Law Dictionary* defines 'obstruction of justice' generally as '[i]nterference with the orderly administration of law and justice[.]' *Black's Law Dictionary* 1107 (8th ed. 2004); *see also* Bryan A. Garner, *A Dictionary of Modern Legal Usage* 611 (2d ed. 1995) (defining 'obstruction of justice' as 'interference with the orderly administration of law'). *Black's Law Dictionary* defines the word 'obstruction' as '[t]he act of impeding or hindering something; interference.' *Black's Law, supra,* at 1107. As defined by *Webster's Dictionary,* the meaning of the word 'obstruct' includes '[t]o impede, retard, or interfere with[.]' *Webster's II New College Dictionary* 773 (3d ed. 2005). The word 'hinder' is defined by *Webster's Dictionary* as 't[o] impede or delay the progress of.' *Webster's, supra,* at 536."

*Id.* at 563, 32 A.3d 44.

 Based upon our uniform use of the phrase "resistance" when discussing resisting arrest, and the ordinary meaning of that word, we conclude that the offense of resisting arrest does not proscribe mere flight from an arresting officer.[8]

Because so many jurisdictions have codified the common-law offense of resisting arrest, it is difficult to identify a consensus from the case law of other jurisdictions, which have developed idiosyncratic statutes. *See Titus,* 423 Md. at 570, 32 A.3d 44 (noting that "reliance on out-of-state courts' interpretations of the statutory offense of obstructing and hindering, as it is worded in each of the various state statutes referenced, is misplaced"). Nevertheless, we find support for our conclusion that the words "resist" and "resistance" do not encompass flight from the considered opinions of other courts that have examined those terms.

---

**8.** Although not before us, we note that when a person "goes limp" in response to an officer's attempt to effectuate an arrest courts have held that such conduct constitutes force for resistance purposes. *See, e.g., People v. Berardi,* 407 Ill.App.3d 575, 350 Ill.Dec. 29, 948 N.E.2d 98, 104 (2011).

For example, in the District of Columbia, any individual who, without cause, "assaults, resists, opposes, impedes, intimidates, or interferes with a law enforcement officer" in the lawful execution of his duties is guilty of a criminal offense. D.C.Code § 22–405(b) (2012). Examining the commonly understood definitions of the verbs used in the statute, the District of Columbia Court of Appeals held that "a person's conduct must go beyond speech and mere passive resistance or avoidance, and cross the line into active confrontation" to violate the statute. *In re C.L.D.*, 739 A.2d 353, 357 (D.C.1999). "The key" to identifying the type of actions proscribed, according to the court, was "the active and oppositional nature of the conduct" identified in § 22–405(b). *Id.* In a later case, the court explained the implausibility of reading the statute as treating flight as confrontational conduct:

> "Here, [the defendant's] flight was not active conduct directed against the officers. It would be inherently inconsistent to find that [the defendant's] flight was directed *at* the officers since he ran *away* from them, and by removing himself from the situation, [the defendant] put distance between himself and the police and any immediate potential for violence."

*Coghill v. United States*, 982 A.2d 802, 807 (D.C.2009); *accord State v. Welch*, 37 Wis. 196, 201 (1875) ("To resist, is to oppose by direct, active and quasi forcible means.... [R]esistance is always direct, and, applied to persons, always implies more or less force.").

Similarly, in defining the word "resist" as used in that state's resisting arrest statute, the Connecticut Superior Court observed as follows:

> "The word is derived from the Latin, its etymological meaning being 'to stand against' or 'to withstand.' It is the opposition of force to force; threats unaccompanied by force or mere words do not constitute resistance; the gist of the offense is personal resistance to the officer, that is, personal opposition to the exercise of official authority or duty, by direct, active and in some degree forcible means."

*State v. Avnayim,* 1 Conn.Cir.Ct. 348, 24 Conn.Supp. 7, 185 A.2d 295, 298 (1962). The Arizona Court of Appeals, in a similar semantic inquiry, relied upon the dictionary definitions of "resist" and of "avoid," and determined that a defendant's mere flight "was conduct which prevented, without the use of resistance, the effectuation of his arrest. In other words, such conduct constituted avoiding arrest, not resisting arrest." *State v. Womack,* 174 Ariz. 108, 847 P.2d 609, 613 (Ct.App. 1993). That interpretation of the statute flowed, the court reasoned, from what it deemed "a common sense application of the ordinary meaning of the statutory language." *Id.*

■■■ Our understanding that flight does not fall within Maryland's proscription against "resistance by force" to a lawful arrest is informed as well by considering the goals behind making resisting arrest a crime. The purpose of criminalizing resistance to a lawful arrest is to protect police officers from the substantial risk of physical injury. *See, e.g., People v. Baker,* 127 Mich.App. 297, 338 N.W.2d 391, 393 (1983); *Schrader v. State,* 753 S.W.2d 733, 736 (Tex.App.1988). This concern for the safety of law enforcement personnel, however, cannot be the decisive consideration when evaluating whether conduct may be criminalized as resisting arrest. For example, the Court of Appeals has repeatedly declined to abrogate the common-law rule in Maryland that one may use reasonable force to resist an unlawful arrest, *see Polk v. State,* 378 Md. 1, 41, 835 A.2d 575 (2003), even though the majority of other jurisdictions in the country have moved away from permitting resistance to an unlawful arrest and abandoned the distinction between lawful and unlawful arrests in this context, *see* Darrell A.H. Miller, *Retail Rebellion and the Second Amendment,* 86 Ind. L.J. 939, 944 & n 37 (2011). Similarly, we believe that including mere flight from an arresting officer within the definition of "resistance by force" would enlarge the realm of criminally-punishable actions without doing much to advance the goals of protecting police.

The dangers of proscribing conduct too broadly for purposes of resisting arrest have been recognized by the drafters of Model Penal Code. The draft Code suggests that the crime

of resisting arrest should only apply to conduct where the individual being arrested "creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance." Model Penal Code § 242.2. The accompanying commentary reads as follows:

"The effect of this language is to exempt from criminal liability non-violent refusal to submit to arrest and such minor forms of resistance as running from a policeman or trying to shake free from his grasp. Such conduct is also excluded from Section 242.1[Obstructing Administration of Law or Other Governmental Function] and thus is not criminal under any provision of the Model Code."

§ 242.2 cmt 2. The American Law Institute's decision not to recommend criminalization of this type of conduct reflected the considered judgment that the charge of resisting arrest is amenable to "grave abuse" by police officers and prosecutors: "Minor acts of evasion and resistance are sufficiently ambiguous to give rise to honest error, sufficiently elusive to encourage false allegations, and sufficiently commonplace to afford general opportunity for discriminatory enforcement." *Id.*

Most—though not all—jurisdictions that have adopted statutes based upon the Model Penal Code provision, consistent with the Code's commentary, construe these statutes to exclude punishment for mere flight. *See, e.g., Womack,* 847 P.2d at 611–13 (stating that leading police on a chase in Arizona was not resisting arrest under "a common sense application of the ordinary meaning of the statutory language"); *see also Howard v. State,* 101 P.3d 1054, 1058 (Alaska Ct.App.2004) (holding that fleeing from officers and hiding in the woods did not constitute resisting arrest); *State v. Crane,* 46 Or.App. 547, 612 P.2d 735, 738–39 (1980) (reiterating that "[o]nly the use or the threatened use of violence or physical force which creates a substantial risk of physical injury is prohibited; neither flight to avoid arrest nor passive resistance have been made crimes"); *In re Woodford,* 420 Pa.Super. 179, 616 A.2d 641, 644 (1992) (holding that "it is equally well-established that a suspect's mere flight to escape arrest does not violate" the

resisting arrest statute). *But see Commonwealth v. Montoya,* 457 Mass. 102, 928 N.E.2d 317, 320 (2010) (holding that a fleeing suspect created a "substantial risk of bodily injury" to officers when he ran from officers and scaled a fence abutting the precipice of a canal in dim light). These cases demonstrate that ordinarily mere flight is not the sort of conduct that threatens harm to law enforcement personnel and, hence, not the sort of conduct at which the offense of resisting arrest is targeted.[9] In other words, these cases stand for the proposition that preventing and punishing flight from police officers is not a natural goal or appropriate use of a resisting arrest statute.

Moreover, while many states prohibit flight under resisting arrest statutes, they do so in ways that distinguish them from the Maryland common-law definition of the offense of refusal to submit and resistance by force. For example, several states by statute prohibit flight explicitly or make non-forceful resistance a lesser offense or both. Arkansas law makes resisting arrest—"using or threatening to use physical force or any other means that creates a substantial risk of physical injury to any person"—a class A misdemeanor but "refusal to submit to arrest"—which means "active or passive refusal"—a class B misdemeanor. *See* Ark.Code Ann. § 5–54–103 (2012); *see also* Del.Code Ann. tit. 11, § 1257 (2012) (punishing flight from an arresting officer "by use of force or violence" as a felony but mere flight as a misdemeanor); La.Rev.Stat. Ann. § 14:108 (2012) (making illegal the "intentional interference with, opposition or resistance to, or obstruction of" an officer and defining the phrase "obstruction of" to include flight); Tex. Penal Code Ann. § 38.04 (2012) (making it a misdemeanor to "intentionally flee" from a peace officer). Many additional states, although not proscribing flight specifically, have statutes that define and punish resisting arrest in terms broad enough to fairly encompass fleeing. *See, e.g.,* Ala.Code § 13A–10–41 (2012) (criminalizing conduct which "prevents or

---

**9.** Cases involving fleeing and eluding a police officer in the context of the motor vehicle codes are analyzed differently.

attempts to prevent" a police officer from effecting an arrest); Ga.Code Ann. § 16–10–24 (2011) (punishing as resisting arrest conduct which "obstructs or hinders" a police officer making an arrest); Idaho Code Ann. § 18–705 (2012) (punishing any "person who wilfully resists, delays *or* obstructs any public officer" (emphasis added)); N.C. Gen.Stat. § 14–223 (2012) (same).

We review these resisting arrest statutes from other jurisdictions because they demonstrate two differing and somewhat divergent approaches to criminalizing flight: prohibiting it specifically through explicit wording or prohibiting it through the use of terms so broad as to encompass all non-forceful conduct. As discussed above, however, Maryland's common-law rule—and, hence, Maryland's statute—does neither and appears to be narrow: resisting arrest requires refusal to submit and resistance by force. This precludes punishment for mere flight.

Finally, as observed above, the wrongful conduct reported in the Maryland case law, in which convictions for resisting lawful arrests have been upheld, has never consisted simply of flight or actions that did not amount to "resistance by force." *See, e.g., Nicolas,* at 389–96, 44 A.3d 396 (pushing, hitting, and struggling with police); *Purnell,* 375 Md. at 684, 827 A.2d 68 (pushing back against officers attempting to handcuff him); *Barnhard,* 325 Md. at 606–07, 602 A.2d 701 ("scuffling" with and swinging at police); *Cooper,* 128 Md.App. at 263, 737 A.2d 613 (pulling from officer's grasp and punching him repeatedly in the head); *Washington,* 87 Md.App. at 135, 589 A.2d 493 (striking officer, knocking him off balance, and running away).

We note that the General Assembly considered proscribing flight explicitly when it codified resisting arrest in 2004 but ultimately declined to do so. Introduced in the 2004 Regular Session, Senate Bill 355, upon its first reading, provided in subsection (b) as follows:

"(B) A PERSON MAY NOT INTENTIONALLY:

(1) INTERFERE WITH AN INDIVIDUAL WHO THE PERSON HAS REASON TO KNOW IS A POLICE

OFFICER WHO IS MAKING OR ATTEMPTING TO MAKE A LAWFUL ARREST OR DETENTION OF THE PERSON OR ANOTHER PERSON; OR

(2) *FLEE* FROM AN INDIVIDUAL WHO THE PERSON HAS REASON TO KNOW IS A POLICE OFFICER WHO IS MAKING OR ATTEMPTING TO MAKE A LAWFUL ARREST OR DETENTION OF THE PERSON."

S.B. 355, 2004 Sess., First Reading, Feb. 4, 2004 (emphasis added).

According to the Fiscal and Policy Note on the bill, the New Issues Subcommittee of the Committee to Revise Article 27 "reviewed resisting arrest statutes from other states, and loosely based their recommendation on Delaware's codification, which also included fleeing from an officer who is effecting an arrest as part of the resisting arrest offense." Fiscal Note at 3. The Senate Judicial Proceedings Committee, however, offered and adopted amendments to S.B. 355, one of which was to strike from the bill subsection (b)(2) in its entirety and any language referring to fleeing. *See* Amend. 1 to S.B. 355 (Mar. 23, 2004), *available at* http://mlis.state.md.us/pdfdocuments/2004rs/amds/bil_0005/sb0355_66837001.pdf; *see also* 2004 Maryland Laws chs. 118 & 119, at 546–49.

The legislative history does not reveal why the references to fleeing were not included in the bill that was enacted. Clearly, if the Legislature disagrees with this interpretation, it has the power to amend the statute.

What has been consistent throughout this Court's and the Court of Appeals' decisions, no matter how the third element has been expressed, is that the particular conduct at issue could be characterized as both a refusal to submit and an act of resistance by force. We have reviewed the reported Maryland cases in which a defendant was convicted for resisting arrest and have been unable to find one in which the conviction rested upon a verbal refusal to submit or non-forceful conduct such as simply running away.

The testimony adduced at trial in the instant case showed no more than that appellant fled from Corporal Peterson. The corporal testified that when he arrested and handcuffed appellant after the first flight, appellant gave him "[n]o real trouble" because "anytime you try to handcuff somebody behind their back usually there's a bit of a defensive motion." Corporal Peterson denied that appellant put up a struggle or did anything "offensive in nature." Once the officer escorted appellant back to the stopped cars, appellant fled for the second time, slipping from Peterson's side and running away. Again, appellant did not struggle or offer any resistance when Peterson apprehended him.

In conclusion, we hold that appellant's mere flight from Corporal Peterson did not amount to resistance by force and, hence, could not legally suffice to support a conviction for resisting arrest. Moreover, if appellant's conduct after he was arrested was not sufficient to sustain the charge, the same conduct before he was arrested, *i.e.*, the first flight, is perforce insufficient.[10]

## B. Second–Degree Escape

We turn now to appellant's conviction for escape in the second degree. The crime of second degree escape is codified at § 9–405, which states, in pertinent part, as follows:

"(a) Prohibited.—(1) *A person who has been lawfully arrested may not knowingly depart from custody without the authorization of a law enforcement or judicial officer.*

---

**10.** We note the following dicta by Judge Alan Wilner, writing for the Court of Appeals in *Collins v. State,* 376 Md. 359, 375, 829 A.2d 992 (2003):

"There does lurk a much more substantial question never addressed by this Court, of whether conduct that consists either of mere flight from a lawful accosting, *Terry*-type detention, or attempt to arrest, *or that otherwise would be encompassed by the separate crime of resisting arrest,* falls within the ambit of the common law offense of hindering or obstructing a public officer in the performance of the officer's official duties." (Emphasis added.)

(2) A person may not knowingly fail to obey a court order to report to a place of confinement.

* * *

(c) Penalty.—A person who violates this section is guilty of the misdemeanor of escape in the second degree and on conviction is subject to imprisonment not exceeding 3 years or a fine not exceeding $5,000 or both." (Emphasis added.) " 'Escape' retains its judicially determined meaning." § 9–401(c).

Appellant contends that "at no point during his ... flight was he 'in custody' ... since he had not yet submitted to the arrest." The State asserts that this argument has no merit. Appellant was in the officer's custody for the purposes of the escape statute, the State maintains, once he was lawfully arrested and was not permitted to depart from custody without authorization.

Section 9–405, the second-degree escape statute, is derived from Maryland Code, § 137A of Article 27. In 1999, the General Assembly amended § 137A in response to *Farris v. State*, 351 Md. 24, 33, 716 A.2d 237 (1998), which held that the defendant was not guilty of escape by failing to report for weekend imprisonment because "he did not leave or physically depart from any place of confinement." In addition to providing that "[a] person may not knowingly fail to obey a court order to report to a place of confinement," the amended § 137A stated that "a person who has been lawfully arrested may not knowingly depart from custody without the authorization of a law enforcement or judicial officer." 1999 Maryland Laws ch. 422, § 3, at 2743. This proscribed conduct was recodified at § 9–405 in 2002 as second-degree escape without substantive change from § 137A. *See Hill v. State*, 419 Md. 674, 680–81 n. 3–4, 20 A.3d 780 (2011).

The Court of Appeals has observed that "[c]ustody is an elastic concept which, for the purposes of escape, connotes restraint upon a person's freedom." *Farris*, 351 Md. at 33, 716 A.2d 237. Section 9–405(a)(1) itself appears to equate a lawful arrest with custody when it states: "A person who has

been lawfully arrested may not knowingly depart from custody...." Second-degree escape under § 9–405(a)(1) requires only that an individual know that he or she is leaving the custody of the police without permission. Unlike resisting arrest, refusing to submit coupled with force is not an element of second-degree escape.

In the present case, Corporal Peterson pursued and brought down appellant after his first flight. The officer told appellant he was under arrest, placed him in handcuffs, and escorted him back to the area of the cars, placing appellant between the rear of appellant's car and in front of the police patrol cars. Appellant's freedom of movement was restrained such that he was in custody when he ran the second time. We hold that the evidence was sufficient to sustain appellant's conviction for escape in the second degree.

**JUDGMENTS OF CONVICTION OF THE CIRCUIT COURT FOR CAROLINE COUNTY FOR POSSESSION WITH INTENT TO DISTRIBUTE COCAINE AND RESISTING ARREST REVERSED; JUDGMENT OF CONVICTION FOR SECOND–DEGREE ESCAPE AFFIRMED. COSTS TO BE PAID BY CAROLINE COUNTY.**